STATE of Missouri, Respondent,

v.

Donald M. JONES, Appellant.

No. KCD 29900.

Missouri Court of Appeals,
Kansas City District.

Dec. 27, 1978.

Donald M. Harding, Terrell, Van Osdol & Magruder, Kansas City, for appellant.

John D. Ashcroft, Atty. Gen., Gregory W. Schroeder, Asst. Atty. Gen., Jefferson City, for respondent.

Before SOMERVILLE, P. J., and DIXON and TURNAGE, JJ.

TURNAGE, Judge.

Donald Jones was found guilty by a jury of stealing property with a value of over $50.00. § 560.156, RSMo 1969. Jones was tried under the Second Offender Act and upon conviction was sentenced by the court to six years imprisonment. On this appeal Jones contends the court erred in (1) allowing a police officer to testify Jones gave a false name when arrested; (2) failing to require a witness to give the reasons he exercised his right to refuse to testify; (3) failing to find the State had suppressed evidence; (4) denying him the right to call a detective to elicit an unsworn statement of a third party; (5) refusing to give an instruction; and (6) ordering an assistant public defender to counsel a witness with respect to his right to refuse to testify when the public defender had previously represented Jones. Affirmed.

Jones does not question the sufficiency of the evidence. The jury could reasonably have found that on January 3, 1977, Randy Bent, a security officer at the Macy's store on East Meyer Boulevard in Kansas City, observed a man take several sets of boy's clothing from a rack and leave the store. Bent gave chase and saw the man jump into a car which proceeded east on 63rd. At the time the man ran from Macy's with the clothing, Officer Gary Parker of the Kansas City Police Department was driving east on 63rd Street. As he approached the Macy's store, he saw a man run out the door carrying an armload of clothing with the store tags visible. After this man jumped into a car that pulled in front of Parker the car continued on east with Officer Parker in pursuit. The car Parker was following pulled into a gas station, whereupon the man Parker had observed run from Macy's with the clothing jumped out and escaped. Officer Parker arrested Leroy Rivers, the driver, and recovered from the car the clothing which was identified as that stolen from Macy's. When arrested, Rivers stated the man who had fled was James Harris.

A few days later Officer Parker and Bent identified Jones from photographs as the man who had run with the clothing from the store. In February, 1977, Officer Donovan of the Kansas City Police Department stopped an automobile with only one Missouri license tag. The driver identified himself as Jake Walker but the officer checked the auto registration and found the car registered in the name of Donald Jones. The driver was taken to police headquarters and through fingerprints was identified as Donald Jones. Charges were then filed against Jones for the clothing theft.

On this appeal Jones first contends the court erred in allowing Officer Donovan to testify that Jones gave him a false name at the time the officer stopped him. Jones contends the fact he was arrested 40 days after the stealing occurred made the giving of a false name totally irrelevant. In *State v. Duncan*, 499 S.W.2d 476, 478[3] (Mo.1973)

the court held the fact a defendant gave a false name to an arresting officer was a circumstance surrounding the arrest which was for the jury's consideration. 22A C.J.S. Criminal Law § 627, p. 472 states the rationale for allowing such testimony is that it is relevant to show consciousness of guilt. The fact Jones gave a false name when arrested some 40 days after the crime goes only to the weight and not the admissibility of the evidence. *State v. Thomas*, 526 S.W.2d 393, 395 (Mo.App.1975). Thus, it was proper to allow testimony that Jones gave a false name when arrested. The remoteness of the date of arrest from the commission of the crime would go only to the weight which the jury could give to such evidence.

■ Jones also complains because the court allowed evidence that he was driving a car with only one license plate and did not produce a valid driver's license when requested. However, no objection was made to testimony relating to these facts so nothing is preserved for review. *State v. Jones*, 523 S.W.2d 152, 155[4] (Mo.App.1975).

■ Jones next contends he should have been allowed to question Leroy Rivers about his reason for exercising his Fifth Amendment rights in refusing to testify about any bias or prejudice which Rivers had against Jones. When called as a witness by Jones, Rivers stated that he refused to answer any questions concerning the offense because he might incriminate himself. Jones' counsel then sought to elicit from Rivers the reason for exercising his right to refuse to testify, but the court held counsel could not so inquire. A full discussion of the extent to which a witness may be questioned about his reason for invoking the right not to testify is found in *State v. Joyner*, 571 S.W.2d 776, 779 (Mo.App.1978). Citing the cases which have discussed this subject, the opinion explains that under the Missouri decisions if the trial court can recognize any rational basis for exercise of the privilege it cannot compel the witness to

give his reasons for so doing. Here, Jones wanted Rivers to testify that James Harris was the person who had stolen the clothing and fled from Rivers' car but he was obviously frustrated in this effort when Rivers refused to testify. Under *Joyner* and the cases cited therein, the court was powerless to require Rivers to give his reasons for exercising the privilege because the court could obviously determine a rational basis existed for Rivers to exercise his privilege.

■ However, Jones carries his argument one step further by asserting he should have been allowed to question Rivers concerning threats which the prosecutor had allegedly made to charge Rivers with perjury if he testified that Harris was the man who stole the clothing. Jones' counsel did ask Rivers if it was true that Jones was not with him at the time of the theft, and if it was not true that the person who was with him was James Harris. In response to both questions, Rivers stated "I would like to take the Fifth on that." Thus, when counsel attempted to elicit the information he sought and Rivers exercised his constitutional right by refusing to testify, the court did not err because it was powerless to require Rivers to testify or give his reasons for refusing. Jones also makes a subsidiary argument that he should have been allowed to elicit testimony from Rivers concerning prosecutorial threats in order to show bias and prejudice. However, there is no reason to show bias and prejudice when the witness fails to testify. *State v. Gordon*, 391 S.W.2d 346, 349 (Mo.1965).

■ Jones next contends the court erred in failing to grant his motion for a new trial because the prosecutor had prevented Rivers from testifying by threats and this constituted misconduct by suppressing evidence. The trial court held an extensive post-trial hearing when it considered this allegation in the motion for a new trial. The court heard six witnesses whose testimony consumed about 53 pages of transcript. Not one witness testified to threats

of any kind against Rivers. At the conclusion of this hearing the court found there was no evidence of any threats and that Rivers had invoked his privilege under the Fifth Amendment for his own reasons and not for any prosecutorial threats of perjury. In order to prevail on this point Jones must allege and prove the State willfully suppressed evidence. *State v. Jackson*, 519 S.W.2d 551, 557[11–13] (Mo.App.1975). In hearing the evidence introduced in the attempt to prove suppression of evidence, the court, functioning as a trier of fact, had the discretion to make a determination on the allegation. The court's finding will not be disturbed so long as it is based on a reasonable foundation of fact and the discretion is not arbitrarily exercised. *State v. Pennington*, 392 S.W.2d 5, 9[7–9] (Mo.App.1965). In the absence of any evidence to support the alleged suppression of evidence, it can hardly be said the court arbitrarily exercised its discretion by refusing to find such suppression.

■ Jones further contends the court erred by refusing to allow him to call Detective O'Rear to elicit testimony that Jones was not the thief and that no effort had been made to apprehend James Harris. The only testimony O'Rear could have given would have been to recite the unsworn statement which Rivers made at one time that Harris was the man with him. For O'Rear to have testified to this statement would have constituted hearsay. *State v. Robinson*, 484 S.W.2d 186, 189[10, 11] (Mo. 1972). Jones hoped to erect a defense based on testimony of this statement by Rivers. However, since Jones' entire argument rests on the sandy foundation that O'Rear should have been allowed to testify to hearsay, the court obviously did not err in rebuffing this effort.

■ Jones next contends the court erred in refusing his tendered instruction which was not in MAI–CR. The instruction Jones tendered was the same as the third paragraph of MAI–CR 2.01 given by the court,

with the addition of "concerning the identification of the defendant" which was inserted after the phrase "the weight to be given to his testimony." The Notes on Use following MAI–CR 2.01, No. 2 states:

> Except as may be specifically provided for elsewhere in MAI–CR, no other or additional instruction may be given on the believability of witnesses, or the effect, weight or value of their testimony.

The instruction tendered by Jones added nothing to MAI–CR 2.01 and in the face of the specific prohibition in the Notes on Use, the court could have taken no other action than to refuse Jones' proffered instruction.

■ Jones finally contends the court erred when it called Mr. Lopez from the public defender's office to advise Rivers of his constitutional right to refuse to testify. Jones contends a conflict of interest was created because Lopez had previously represented Jones. Jones does not argue that Lopez did anything other than consult with Rivers concerning his constitutional right to refuse to testify because of self-incrimination. While it may have been preferable for someone else to have advised Rivers, it appears no one else was available. However, even if it be assumed there was a conflict of interest, in view of the previous holding that Rivers had a rational basis for invoking his privilege, there could be no prejudice shown to have resulted against Jones from the consultation between Rivers and Lopez. Only prejudicial error is reversible and in the absence of demonstrated prejudice to Jones, any flaw which may have existed would not require a reversal of the judgment. *State v. Belleville*, 530 S.W.2d 392, 395[5, 6] (Mo.App.1976).

The judgment is affirmed.

All concur.