STATE of Missouri, Plaintiff–Respondent,

v.

Gregory Ivan CAMPBELL, Defendant–Appellant.

No. 25351.

Missouri Court of Appeals, Southern District, Division One.

Oct. 29, 2004.

N. Scott Rosenblum, Mark W. Lyons, Rosenblum, Schwartz, Rogers & Glass, P.C., Clayton, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Shaun J. Mackelprang, Assistant Attorney General, Jefferson City, for respondent.

PHILLIP R. GARRISON, Presiding Judge.

Gregory Ivan Campbell ("Appellant") appeals from a conviction, pursuant to Section 195.211[1], of possession of more than five grams of marijuana with the intent to distribute.

## I. FACTS

On January 3, 2002, at approximately 5:15 P.M., officers of the SEMO Drug Task Force and the DEA began surveillance of Appellant in preparation for arresting him on an unrelated warrant. The officers followed Appellant around parts of Cape Girardeau, Missouri for between half of an hour and an hour before observing him return to his home. The officers

---

1. All statutory references are to RSMo (2000) unless otherwise specified.

maintained surveillance on his home until he left again, around 7:30 P.M., in a white GMC Suburban. While at his home, Appellant went back and forth from the house to the Suburban a couple of times, and no one else got into or out of the vehicle. After leaving his home, Appellant appeared to pick someone up near the area of Maple Street and Ellis Street and then proceeded to drive to the Salvation Army building where he stopped to play basketball. Appellant stayed at the Salvation Army for approximately two hours before leaving, alone, at around 9:30 P.M. The officers continued to follow Appellant west on William Street, and made contact with uniformed officers of the Missouri Highway Patrol in order to stop Appellant. Appellant pulled into an Amoco station parking lot at the corner of William Street and Kingshighway, and the Highway Patrol Officers followed him but parked behind the station. Upon leaving the Amoco station, Appellant turned north onto Kingshighway, then west onto Independence Street, where officers of the Highway Patrol stopped him.

Appellant was arrested and a search of his vehicle was conducted. The searching officer found a black plastic bag under the driver's side seat of Appellant's vehicle. Inside of the bag, there was a large clear plastic bag containing four smaller bags, each with a green leafy substance that was later determined to be marijuana inside of them. The total weight of the marijuana found was 100.7 grams. The searching officer also found a digital scale with a white residue on it in the console between the front seats of Appellant's vehicle. The white residue was field tested by the DEA agent and determined to be cocaine, though all of the residue was consumed in the test. Finally, the officer found Appellant's wallet lying on the passenger seat of the vehicle. Inside of the wallet, the officer found a small, clear plastic bag with a white residue inside it. A field test by the DEA agent found the residue to contain cocaine or cocaine base, though the DEA laboratory found it to be heroin.

Appellant was charged with possession of more than five grams of marijuana with intent to distribute under Section 195.211; possession of heroin under Section 195.202; and possession of drug paraphernalia, the digital scale, under Section 195.233. A jury found Appellant guilty of possession of more than five grams of marijuana with intent to distribute, but not guilty of the other two charges. The trial court sentenced Appellant to six years in the Missouri Department of Corrections, to be served as 120 days of "shock incarceration" followed by five years of probation. This appeal followed.

## II. APPELLANT'S FIRST POINT ON APPEAL

■ In his first point on appeal, Appellant claims that the trial court abused its discretion in denying his request for a mistrial when defense witness Albert Estes ("Estes") became unavailable to testify on his behalf. He contends that Estes became unavailable as a result of prosecutorial misconduct and coercion by the police who arrested him soon after he was disclosed as a defense witness, and that he was subjected to threats and intimidation to prevent him from testifying on Appellant's behalf. Appellant claims that this violated his rights to due process, compulsory process, and the right to present a defense under the Fifth, Sixth and Fourteenth Amendments to the U.S. Constitution and Article I, §§ 10 and 18(a) of the Missouri Constitution.

Appellant claims that he intended to call Estes at trial and that Estes was to testify that the marijuana found in Appellant's car was his and that he had possession of

Appellant's car on January 3, 2002. Appellant asserts that after he informed the State a few days before trial that Estes was going to testify to these facts, Estes was arrested and charged in Cape Girardeau County, Missouri. When Estes appeared at Appellant's trial, he refused to testify on the basis of his Fifth Amendment right against self-incrimination. Appellant moved for a mistrial, claiming that the State improperly interfered with Estes by convincing him not to testify. The trial court denied the motion for mistrial, but allowed Estes to be placed on the stand, outside the presence of the jury, for the court to explain his Fifth Amendment rights to him and allow Appellant to question him. Though not described as such, the trial court appears to have allowed Appellant to make an offer of proof.

Appellant called Estes to the stand, outside of the presence of the jury, and the trial court asked whether Estes understood that Appellant expected Estes to testify that the marijuana was his. Estes indicated that was correct. The trial court then informed Estes of his Fifth Amendment rights not to make any incriminating statements. Estes claimed that he had spoken with an attorney and had decided to exercise his Fifth Amendment rights. The Appellant then examined Estes about the circumstances of his recent arrest. Estes said:

> [he] was advised, at this time, that [he] was arrested, that, you know, [he] could benefit [himself] if [he] was to tell [the police], you know, what [he] knew or if [he] do [sic] know anything, you know, that, it would, it would be beneficial to [him], with the warrant that was issued to [him] Thursday.

He further stated that no officer, in exact terms, told him that things would go worse for him if he testified for Appellant, but he "kind of got the feeling, that, you know, it was just best for [him] to cooperate." The police wanted him to tell them what he knew to "help the case." Finally, Estes confirmed that he was going to exercise his Fifth Amendment right not to testify. Appellant asked that he be allowed to put Estes on the stand to exercise his Fifth Amendment right before the jury, but the trial court denied that request.

Appellant did not properly preserve his motion for mistrial because he failed to renew his motion after Estes gave his testimony, even though he raised the issue in his motion for new trial. By only moving for mistrial before Estes gave his testimony, Appellant did not give the trial court the opportunity to consider its previous ruling against the backdrop of Estes's testimony. *See generally State v. Sullivan*, 553 S.W.2d 510, 513 (Mo.App.K.C. 1977) (Procedure to present and preserve an offer of proof is "to have the witnesses present; put them on the stand; propound the questions; and thus enable the trial court to intelligently rule upon, and the appellate court to review, the propriety and admissibility of the evidence sought to be elicited."); *see also State v. Aziz*, 861 S.W.2d 803, 807 (Mo.App. E.D.1993) ("The rationale for requiring a trial objection is to give the trial court an opportunity to reconsider its prior ruling against the backdrop of the evidence actually adduced at trial."). Because Appellant did not preserve his claim for appeal, we can review only for plain error. Rule 30.20.[2]

By failing to renew his motion for mistrial, Appellant, in raising the issue in his motion for new trial, is essentially

2. All rule references are to Missouri Rules of Criminal Procedure (2002) unless otherwise indicated.

claiming that the trial court should have ordered a mistrial *sua sponte* after hearing the testimony of Estes. "For [Appellant] to prevail on his claim of plain error he must show that the court's failure to *sua sponte* grant a mistrial so substantially affected his rights that a manifest injustice or miscarriage of justice will inexorably result if left uncorrected." *State v. Tilley,* 104 S.W.3d 814, 819 (Mo.App. S.D.2003). Mistrial is a drastic remedy that should be reserved for the most extraordinary circumstances. *State v. Bewley,* 117 S.W.3d 738, 742 (Mo.App. S.D.2003). "[A]ppellate courts are especially wary of claims that a trial court erred in failing to grant a mistrial *sua sponte* in criminal cases" because of double jeopardy concerns. *Tilley,* 104 S.W.3d at 819.

 A defendant has the fundamental right to present witnesses in order to establish a defense. *Washington v. Texas,* 388 U.S. 14, 19, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019, 1023 (1967). Governmental interference with the right to present a defense, including calling defense witnesses, violates the U.S. Constitution. *United States v. Deering,* 179 F.3d 592, 595 (8th Cir.1999). "[T]he use of coercive measures which effectively drive a key defense witness from the stand deprives a defendant of due process of law under the Fourteenth Amendment of the U.S. Constitution." *State v. Brown,* 543 S.W.2d 56, 59 (Mo.App.St.L.1976). "[W]here the prosecutor intimidates or threatens a witness to dissuade the witness from testifying, the defendant is improperly denied his sixth amendment right to present witnesses in his own defense." *State v. Grays,* 856 S.W.2d 87, 91 (Mo.App. E.D. 1993). When there are no threats or intimidation, however, there is no impropriety. *Id.* The defendant must allege and prove that the State "willfully suppressed evidence" in order to prevail on his claim.

*State v. Jones,* 575 S.W.2d 899, 902 (Mo. App.K.C.1978).

Here, Estes was arrested shortly before this trial. We do not know the basis for his arrest, but there does not appear, from the transcript, to be any indication that it was illegal or improper. From the record of Estes's statements at trial, it appears that the officers knew that he was going to testify, but were seeking his cooperation in the State's case against Appellant. Estes does not claim that the officers made any direct threats against him. He stated that they told him he could "benefit [himself]" if he were to tell them what he knew with regard to the warrant issued against him. Estes did not go so far as to say the officers discouraged him from coming to testify, but kept asking him to "cooperate." It is not clear from the record, but at some point, Estes was advised by an attorney regarding his Fifth Amendment right not to incriminate himself, and was in the process of seeking further advice, but had been unable to obtain any, before he appeared at trial.

The record does not reflect any direct threats made against Estes, nor does there appear to be outright intimidation. We are not presented with any evidence that his arrest was improper, and from Estes's testimony, it appears the police were looking for more information about Appellant and for "cooperation" from Estes. Based on these facts, Appellant has not carried his burden of showing that the State willfully suppressed evidence. Hence, there cannot be manifest injustice or a miscarriage of justice resulting from the trial court's failure to grant a mistrial *sua sponte.* Appellant's first point is denied.

### III. APPELLANT'S SECOND POINT ON APPEAL

 In his second point, Appellant claims that the trial court abused its dis-

cretion, or plainly erred if Appellant did not preserve his point for appeal, by giving an unauthorized "hammer" instruction in violation of Appellant's rights to due process and a fair trial under the Fifth and Fourteenth Amendments to the U.S. Constitution and Article I, §§ 10 and 18(a) of the Missouri Constitution. He complained that after the jury indicated that it was deadlocked on two of the counts, the trial court gave a "hammer" instruction that coerced a guilty verdict, and "failed to caution the jurors that they should not agree to a verdict that violated the court's instructions nor should they agree to a guilty verdict unless they were convinced of guilt beyond a reasonable doubt."

After deliberating for less than two hours, the jury sent a note to the trial court stating, "[W]e have a hung jury. What's next?" The trial court conferred with counsel for the State and Appellant, and decided to bring the jury back into the courtroom, but the trial court stated, "I don't want to give the written hammer instruction at this time. I'll kind of wait to see what they have to tell me." Counsel for the State and Appellant agreed. The trial court then brought the jury back into the courtroom where it inquired as to how close the votes were. After being informed that the votes were 10–2 on Counts I and III, with unanimous agreement of not guilty on Count II, the trial court decided to send the jury back for further deliberations. Before doing so, however, the trial court told the jury:

> I'm going to request that the jury return to your jury room for further deliberations. I mean, the parties have the right for this jury to return a verdict. This jury is, is as well qualified as any other jury to return a verdict in this case. If that cannot be done, so be it, but we've tried this case all day long, you've only deliberated approximately an hour and [forty] minutes, and, and, I

know that it's tough to send you folks back in there. Sometimes tensions arise, and, and things happen. We, we can make, and have made arrangements for supper for you folks. I know it's getting to the point that I like to eat about this time, if not before, and I'm sure you folks do too.

> I guess my question to the foreperson, in your opinion, ma'am, do you believe that any further deliberation will be, would be fruitful in this case, in attempting to reach a verdict.

The foreperson responded that she did not believe any further deliberations would be fruitful, however, the trial court further stated:

> I want you to return to your jury room. I want you to fill out the appropriate verdict forms to which you unanimously agree, to be obviously signed by the for person [sic]. And, while you're in there, I want to consult with the attorneys before we proceed further. And while you're in there, I would hope that you would at least consider further deliberations I mean, as you folks are well aware, it is not uncommon, in other parts, other courts, and jurisdictions around the country to deliberate for hours or days, or as long as necessary, to attempt to reach a verdict. I'm not gonna keep you folks tied up in that jury room, any longer than is necessary, and, if you actually tell me that you think that there was no hope or any possibility of arriving at a unanimous verdict, then we can discuss that shortly, but I am gonna ask you that you retire to your jury room, and if the for person [sic] will fill out the appropriate verdict form, attempt, again, to deliberate. And, if, again, after, whether it's 19:15 or however long, if it looks like this is the end of it, and this is the way this case is gonna resolve itself, then let me know again.

And I will, you know, this case, does not have to be, the verdict does not need to be returned tonight. We can recess and come back, if need be tomorrow or the next day or the next day, if need be. I know that that's not something that everybody wants to do, but, I mean, that is always a possibility, and I'm not gonna keep you if you just say that this case, there's no hope. But there may be some hope, and I'd hope now that you've heard me talk that maybe you can go back and address it at least one more time. Thank you, very much.

The jury later returned verdicts of guilty as to Count I and not guilty as to Counts II and III.

The Appellant claims that these statements by the trial court amounted to an impermissible "hammer" instruction because of its failure to caution the jury against a verdict that violated the instructions or was not beyond a reasonable doubt. Appellant, however, did not object to the trial court's statements at the time nor did he request a mistrial, though he raised the issue in his motion for new trial. Appellant contends that the issue is properly preserved for appeal because he had no opportunity to object to the instruction. He claims that the trial court chose to instruct the jury in a coercive manner without warning the defense. Appellant, however, cites no authority to support his contention.

"No party may assign as error the giving or failure to give instructions or verdict forms unless the party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection." Rule 28.03. Appellant, though claiming that he had no opportunity to do so, had ample time, during the trial court's colloquy with the jury, to both realize the nature of the trial court's statements and to object be-

fore the jury retired for further deliberations. Accordingly, Appellant's contention was not properly preserved for appellate review. Appellant contends, however, that if we do not find that his claim was preserved for appellate review, we exercise our discretion to review his claim for plain error.

■■■ "The giving or failing to give an instruction or verdict form in violation of this [rule] or any applicable Notes On Use shall constitute error, the error's prejudicial effect to be judicially determined, provided that objection has been timely made." Rule 28.02(f). "The question of whether a verdict is coerced is a matter of plain error." *State v. Burns*, 808 S.W.2d 1, 2 (Mo.App. E.D.1991). "By definition coercion of a verdict is a matter affecting substantial rights and involves issues of manifest injustice or miscarriage of justice." *Id.*

■■■ "The trial court has discretion in deciding whether or not to give the hammer instruction and the court abuses that discretion only if the instruction coerces the jury's verdict." *State v. Johnson*, 948 S.W.2d 161, 164 (Mo.App. E.D. 1997). A verdict is considered coerced when "under the totality of the circumstances it appears that the trial court was virtually directing that a verdict be reached and by implication indicated it would hold the jury until a verdict was reached." *Id.* There are several factors that aid the courts in determining whether a jury's verdict was coerced: (1) the amount of time the jury deliberates before and after the reading of the hammer instruction, (2) whether the trial court knows numerically how the jury is split and the position of the majority, and (3) whether the giving of the hammer instruction conforms with the Notes on Use. *Id.*

Here, the trial court did not give the hammer instruction as set out in MAI–CR 3d 312.10. The Appellant contends that the trial court's statement to the jury, as set out above, was the functional equivalent of the hammer instruction, albeit without the necessary safeguards contained in the approved instruction. In fact, the statement the trial court made bears a resemblance to MAI–CR 1.10 (1973), a previous version of the hammer instruction.[3] However, MAI–CR 1.10 (1973) also contained admonitions against verdicts that violate instructions or finding facts which under the evidence and conscience of the juror he or she believes to be untrue. Appellant claims that giving this supposed hammer instruction, without the safeguards, is reversible error.

In support of this contention, Appellant discusses *State v. Hayes*, 563 S.W.2d 11 (Mo. banc 1978). In *Hayes*, the Supreme Court found that the trial court committed reversible error when it instructed the jury that it must return one of three possible verdicts without including the safeguards contained in MAI–CR 1.10 after the jury reported that it could not agree. *Id.* at 11–12. The Supreme Court stated that the caution ("no juror should ever agree to a verdict that violates the instructions of the Court, nor find as a fact that which under the evidence and his conscience he believes to be untrue") "is the crux of the instruction and its absence tends to detract from the basic duty of a juror and the fundamental concept of a fair trial." *Id.* at 12.

However, there is another line of cases that have found no error when the judge makes a comment not requiring the jury to find a verdict, but merely to continue its deliberations. *See State v. Hinkle*, 987 S.W.2d 11, 13–14 (Mo.App. E.D.1999); *Johnson*, 948 S.W.2d at 165. These cases require that the court make an unequivocal statement that the jurors must reach a verdict in the case. *Id.; Hinkle*, 987 S.W.2d at 13.

The present case falls more in line with *Hinkle* than *Hayes*, however. Here, the trial court did not demand that the jury return a verdict on the counts about which they reported a less than unanimous agreement. The trial court plainly stated, several times, that if a verdict could not be reached, it would not keep the jury. We note, however, that the trial court did not give a cautionary instruction as mandated in *Hayes* or contained in MAI–CR 3d 312.10.

Furthermore, when we consider the test for coercion, it does not appear that the trial court's statements coerced a verdict. Although the trial court did not comply with the Notes on Use for MAI–CR 3d 312.10, the other factors weigh in favor of a finding of no coercion. The trial court made its statement at approximately 7:25 P.M., after about one hour and forty minutes of deliberations, and the jury returned its verdict at 9:40 P.M. The jury deliberated for approximately an additional two hours and fifteen minutes. Missouri courts have found that a time period as short as approximately one-half hour was not a sign that the verdict was coerced. *See* discussion of case law in *State v. Jackson*, 896 S.W.2d 77, 80 (Mo. App. W.D.1995). The trial court also knew the votes of the jurors, 10–2 on both counts, but did not know whether those

3. MAI–CR 1.10 (1973) stated in pertinent part, "It is desirable that there be a verdict in every case. The trial of a lawsuit involves considerable time and effort, and the parties are entitled to have their rights determined once and for all in every case. The twelve jurors chosen to try this case should be as well qualified to do so as any other twelve that might hereafter be chosen."

votes favored conviction or acquittal. Under this test, we do not find that the verdict was coerced.

The standard of review in this case is also important to our decision. We are only reviewing for plain error, not the lesser standard of prejudice. The jury deliberated for a longer time after the supposed hammer instruction was given than it had before the instruction. Even without the cautions contained in MAI–CR 3d 312.10, it does not appear, from the record, that the jury was coerced into returning a verdict. The trial court, in its own way, informed the jury that it did not have to reach a verdict and the jury deliberated for more than two additional hours. It did not rush to a verdict. Furthermore, it is certainly possible that Appellant's failure to object to the trial court's statement was strategic in nature. Appellant knew that the jury had one verdict of acquittal, and the votes on the other two were 10–2. Appellant could have reasonably believed that the votes on the other two counts were also in favor of acquittal. If that were the case, it would have been in Appellant's best interest for the jury to return to deliberations following the trial court's statement so that it might return a verdict of acquittal on the other two counts.

Therefore, we do not find that a manifest injustice or miscarriage of justice resulted from the trial court's comments. In doing so, we note that neither party raises an issue about the fact that the complained of comments by the trial court were oral rather than in writing. This is notwithstanding the fact that jury instructions are to be written and given to the jury. *See* Rule 28.02(a); *State v. Taylor*, 581 S.W.2d 127, 129 (Mo.App. W.D.1979). Our decision does not condone the use of non-pattern, oral instructions to the jury, nor should this opinion be construed as an approval of

the trial court's comments. We simply do not find that those comments created a manifest injustice. Appellant's second point is denied.

## IV. APPELLANT'S THIRD POINT ON APPEAL

■ In his third point, Appellant claims that the trial court abused its discretion by overruling Appellant's objections to the State eliciting numerous references to a warrant being issued for Appellant and the surveillance being conducted by the "Drug Task Force" and Drug Enforcement Agency because this constituted proof of other crimes. Appellant claims that this violated his rights to due process and a fair trial as well as his right against conviction based on crimes not charged.

In its opening statement, the State referred to an outstanding arrest warrant for Appellant on several occasions. Specifically, the Prosecutor related,

> officers from several agencies, the Cape Girardeau Police Department, the SEMO Drug Task Force, and the Missouri Highway Patrol, and DEA, were seeking to execute an arrest warrant for [Appellant]. Now, that warrant is not the subject of this trial. The subject of this trial is what happened when they executed that warrant. The officers had gotten together and formulated a plan to do surveillance on [Appellant] and try to arrest him on this particular day.

Also, that Prosecutor stated that when the Highway Patrol officer stopped Appellant, the officer told Appellant that he had a warrant for his arrest. Appellant did not object to these statements during the State's opening. However, after the State finished its opening statement, Appellant's counsel moved for a mistrial on the basis that the State "injected uncharged crime into this case by the reference that the

whole drug Task Force was out to serve a warrant on [Appellant]." The State responded that it was necessary to include the warrant to explain why the officers had been watching Appellant since 5:00 P.M. on the date of his arrest. The trial court denied Appellant's request for mistrial.

During the State's case in chief, several witnesses mentioned the warrant for Appellant's arrest. The State asked Missouri Highway Patrol Officer Jeremy Weadon ("Officer Weadon") why he was involved with Appellant's case, to which he replied that he had been contacted to provide assistance in serving an arrest warrant on Appellant. Appellant did not object to this testimony. Nor did Appellant object when Officer Weadon again referred to the warrant. DEA Agent Homer Markhart referred to the warrant twice during his testimony, and neither time did Appellant object. Finally, Cape Girardeau Police Officer William Sullivan referenced the surveillance of Appellant and the arrest warrant without objection from Appellant. Appellant renewed his motion for mistrial at the close of the State's case. The trial court again denied Appellant's motion. Appellant, in his motion for new trial, included the issue of the warrant and surveillance.

Appellant argues that he preserved his motion for mistrial for appeal by moving for mistrial following the State's opening, renewing that motion at the close of the State's case, and including the issue in his motion for new trial. The State argues, however, that this issue is not preserved for appeal because Appellant did not specifically object to the statements by the State or the witnesses. The State argues that moving for mistrial and including the issue in a motion for new trial is not enough without objecting to the statements during trial.

■ In order to preserve an error in the admission of evidence at trial, it is necessary to object to the evidence at trial and to assert the error in the motion for new trial. *State v. Mahoney*, 70 S.W.3d 601, 605 (Mo.App. S.D.2002). "Failure to object at the earliest opportunity to the admission of evidence … constitutes a waiver of the claim." *Id.* (quoting *State v. Cosby*, 976 S.W.2d 464, 467 (Mo.App. E.D. 1998)).

■ Here, though Appellant moved for a mistrial following the State's opening statement, and then renewed that motion at the close of the State's evidence, Appellant did not object to the numerous witnesses' statements referencing the outstanding arrest warrants. An opening statement is not evidence. *State v. Rutter*, 93 S.W.3d 714, 727 (Mo. banc 2002). Therefore, moving for mistrial following the State's opening statement did not preserve an objection to inadmissible evidence, even if Appellant's motion for mistrial could be construed to be an objection. Furthermore, Appellant has a duty to object to evidence in a timely manner in order to preserve that objection for appeal. *Mahoney*, 70 S.W.3d at 605. Appellant did not object to any of the witnesses' statements regarding the outstanding arrest warrant. If we go so far as to interpret Appellant's renewal of his motion for mistrial at the close of the State's evidence as an objection to these statements, it is not timely. As a result, Appellant's claim is not properly preserved for appeal and our review is only for plain error.

■ "An issue 'not preserved may be considered only if the [C]ourt finds that manifest injustice or miscarriage of justice has resulted therefrom.'" *Id.* (quoting *State v. Morrow*, 968 S.W.2d 100, 106 (Mo. banc 1998)); Rule 30.20. The Appellant bears the burden of showing that "manifest injustice or a miscarriage of justice

will occur if the error is not corrected." *Id.* (quoting *State v. Winder,* 50 S.W.3d 395, 406 (Mo.App. S.D.2001)).

The general rule is that evidence of prior uncharged conduct is inadmissible for the purpose of showing the propensity of a defendant to commit the crime with which he or she is charged. *State v. Charlton,* 114 S.W.3d 378, 384 (Mo.App. S.D.2003). However, "evidence of uncharged misconduct is admissible to paint a complete picture of the crimes charged and to explain circumstances that led to the current charges." *State v. Joos,* 966 S.W.2d 349, 354 (Mo.App. S.D.1998). Such "[e]vidence is also admissible to explain an officer's conduct in making an arrest." *Id.* Furthermore, "[t]he mention of outstanding warrants may be admissible to provide a clear and coherent narrative of the circumstances preceding the arrest." *State v. Sanders,* 761 S.W.2d 191, 192 (Mo. App. E.D.1988). The trial court, in its discretion, determines the admissibility of other crimes evidence by evaluating whether the prejudicial effect of the evidence outweighs its probative value. *State v. Hamilton,* 817 S.W.2d 8, 11 (Mo.App. W.D.1991); *see also State v. Henderson,* 826 S.W.2d 371, 374 (Mo.App. E.D.1992).

Appellant cites *State v. Tillman,* 454 S.W.2d 923, 926 (Mo.1970), for the proposition that the Supreme Court of Missouri "expressly rejected the State's position that evidence of uncharged crimes fell within an exception to the general rule prohibiting such evidence when the evidence was introduced to show the circumstances of an arrest." In *Tillman,* the Supreme Court found that it was improper for the prosecutor to remark that the defendants were arrested for murder and robbery and to admit the similar testimony of the arresting officer. *Id.* at 926. The State did not justify its presentation of this evidence other than to say that the "jury

were entitled to know the circumstances of the arrest because the admissibility of the pistols seized depended on the legality of the arrest." *Id.* However, the legality of the arrest had been determined at a pre-trial suppression hearing. *Id.* Therefore, the State's justification was invalid. *Id.* *Tillman* differs from this case, however.

When Appellant first moved for a mistrial, the State proclaimed that it was necessary to refer to the warrants because the jury would wonder why the officers were arresting Appellant and had been watching him all evening. Furthermore, when Appellant renewed his motion at the end of the State's case, the trial court agreed with the State's argument that referring to the warrant was

> necessary for the corroboration of the actions of the officers, and why they were where they were when they were doing what they were doing, there's obviously eye [sic] been nothing injected to this jury as to the underlying circumstances as to this warrant being issued for what it was for.

We agree with the trial court that referring to the warrant was justified to paint a picture for the jury of why the officers were watching Appellant and why they eventually pulled him over and arrested him. If no explanation were made, the jury would be left to wonder why the officers chose to stop Appellant when there was no explanation for doing so. The State did not describe the nature of the arrest warrant, nor did it insinuate, as it did in *Tillman,* the specific crimes for which the warrant was issued. Any prejudice that may have caused Appellant was minimal at most. We cannot say that the trial court's refusal to grant a mistrial because of the State's comments and testimony of the witnesses was a manifest injustice or miscarriage of justice. Accordingly, Appellant's third point is denied.

## V. CONCLUSION

Appellant's three points on appeal are denied and the judgment of the trial court is affirmed.

PREWITT, J., and RAHMEYER, J., concur.