

# In the Missouri Court of Appeals
## Western District

STATE OF MISSOURI, )
                    Respondent, )
v. )     WD75699
)     FILED:
TODD FONVILLE, )
                    Appellant. )

## APPEAL FROM THE CIRCUIT COURT OF JACKSON COUNTY
### The Honorable Wesley B. Powell, Judge

### Before Division Four: James E. Welsh, Chief Judge Presiding,
### Victor C. Howard, Lisa White Hardwick, Judges

Todd Fonville appeals from his convictions for first-degree murder, second-degree murder, two counts of armed criminal action, leaving the scene of a motor vehicle accident, and knowingly burning. He contends the circuit court erred in giving the jury a non-approved instruction on partial verdicts instead of the hammer instruction after the jury informed the court that it had reached a verdict on some counts but was deadlocked on others. Fonville argues that the instruction adversely affected the jury and coerced it to reach a verdict on all counts. For reasons explained herein, we affirm.

### Factual and Procedural History

The sufficiency of the evidence to support Fonville's convictions is not at issue. On April 11, 2011, Fonville, his girlfriend, Anna Marie Becchina, and her friend, Miguel Apodaca, were at Apodaca's house smoking methamphetamine. At some point, Fonville and Apodaca began talking about robbing Jose Morales, one of Apodaca's associates who occasionally sold him drugs. They decided that they would ask Morales to come over and sell them two ounces of methamphetamine. While Morales was there, Fonville would rob him and appear to rob Apodaca before fleeing. Apodaca called Morales and asked him to bring over two ounces of methamphetamine. Before Morales arrived, Fonville put on a pair of gloves, and Apodaca gave him a sawed-off shotgun, which Fonville loaded, and some extra shells.

When Morales arrived, his girlfriend, Debeney Kreiling, was in the car with him. Kreiling stayed in the car while Morales went into the house and downstairs to the basement with Apodaca. According to Apodaca, after he and Morales went into the basement, Fonville came out of a small bedroom in the basement and shot Morales in the face, blinding him. As Morales staggered and fell to his knees, Fonville walked over to him, reloaded the shotgun, and shot him in the side of the head, killing him. Apodaca went through Morales's pockets, recovering a small baggie of methamphetamine and $600.

Either Apodaca or Fonville then yelled to Becchina, who was upstairs, to go get Kreiling. Becchina summoned Kreiling. Becchina told Kreiling that Morales was in the basement. When Kreiling got to the basement, she saw Morales's body and started to scream. Fonville shot Kreiling in the chest. He then hit her in the head several times

2

with the shotgun and stabbed her in the jaw and chest, killing her. After he killed Kreiling, Fonville went upstairs and told Becchina not to go downstairs.

Fonville, Apodaca, and Becchina wrapped the bodies of Morales and Kreiling in blankets and loaded them into Morales's car. The group took Kreiling's purse, which she had set down in Apodaca's house, and got into Morales's car. Fonville drove as they looked for a place to dispose of the bodies. As Fonville was driving, a small child walked out from behind a parked car. Fonville hit the child. Becchina yelled at Fonville to stop the car, but he said that he could not stop because there were two dead bodies in the car.[1]

The group decided to go someplace to burn the car. Fonville drove to Cliff Drive and pulled off the road. Fonville and Becchina tried to take the car stereo out of Morales's car, but they could only remove the face plate. They grabbed other items from the car, including a computer that belonged to Kreiling, a rosary, an iPod-type device, and Kreiling's purse. Apodaca and Becchina got out and started running away from the car, while Fonville poured gasoline over the victims' bodies and lit the car on fire. An eyewitness saw all of three of them as they ran from the burning car.

Fonville, Becchina, and Apodaca ran to a nearby elementary school, where Fonville disposed of several live shotgun shells that Apodaca had given him. Fonville called a friend to get a ride for him and Becchina, while Apodaca got a ride with one of his friends. Fonville and Becchina went to her mother's residence, where they called one of their friends, LeEric McClenton, to come over. Apodaca went to his house to try to clean the blood and to destroy other evidence.

---

[1] The child suffered only minor abrasions.

Back at the fire scene, the police discovered the burned bodies of Morales and Kreiling in Morales's car sometime after 6:00 p.m. Around 9:30 p.m., Apodaca's mother came home to find Apodaca and a friend of his outside the house. They asked to borrow her car and left. When she went inside the house, she smelled a strong odor of bleach and saw bleach on the basement steps. As she started to sweep the basement, she noticed that the broom was "all filled up" with blood. She called the police. The police found blood evidence inside and outside of the house.

In the early morning hours of April 12, 2011, Apodaca went to Becchina's mother's residence. Fonville, Becchina, and McClenton were still there. McClenton heard Becchina talk about a "kid getting hit," but no one talked about the robbery or murders. Sometime after 6:00 a.m., the police arrived and arrested Apodaca for homicide. Becchina was arrested on an unrelated warrant. Fonville was not arrested at that time. Both Apodaca and Becchina eventually made statements to the police about the murders and identified Fonville as having been involved.

Meanwhile, Fonville spent the day with McClenton at McClenton's brother's residence. Fonville had Kreiling's laptop with him. He gave McClenton the iPod-type device that he had taken from Morales's car. Fonville told McClenton, "I fucked up. I shouldn't have shot them." The police eventually arrived and arrested Fonville. At the residence, the police found Kreiling's laptop; a plastic bag containing a purse, some cords, and jewelry; Morales's car stereo faceplate; the rosary taken from Morales's car; and a pair of gloves in a trash can. One of the gloves had blood stains on it, and testing showed that the stains were consistent with the DNA of Morales and Kreiling. Fonville's DNA and Kreiling's DNA were consistent with a swab taken from inside the glove.

4

When the police interviewed Fonville, he initially told them that he was with his boss from 9:00 a.m. to midnight on the day of the murders. After the police told him that his boss denied being with him that day, Fonville admitted being at Apodaca's house but claimed that Apodaca shot Morales and Kreiling. Fonville also admitted knowing that Apodaca wanted to rob Morales; agreeing to be there to support Apodaca during the robbery; going back downstairs with Apodaca after Becchina brought Kreiling in following Morales's shooting; helping to put the victims' bodies in the car; driving the car and hitting the child; discussing burning the car and selecting the spot to do so; and disposing of the other shotgun shells near the school.

The State charged Fonville with first-degree murder or, in the alternative, second-degree felony murder for Morales's death; first-degree murder or, in the alternative, second-degree felony murder for Kreiling's death; two counts of armed criminal action; leaving the scene of a motor vehicle accident; and knowingly burning.

A jury trial was held in late July 2012. The case was submitted to the jury for deliberations at 12:35 p.m. on July 30, 2012. The jury deliberated until approximately 5:00 p.m. The jury did not reach a verdict that day and returned the next day at 9:00 a.m. to resume deliberations.

Around 10:20 a.m. on July 31, 2012, the jury sent a note asking, "How do we move on if one person is hung on instruction 21/22 when instruction 3 clearly states not to single out?" Instruction 21 advised the jury that the presence of a person at or near the scene of an offense was alone not sufficient to make him responsible for the offense. Instruction 22 advised the jury that, when two or more persons are criminally responsible for an offense that is divided into degrees, each person is guilty of that

5

degree that is compatible with the state of mind with which he acted. Instruction 3 told the jury not to single out certain instructions and disregard others. The parties agreed to the court's response, which told the jury to be "guided by all the instructions as given by the Court in their entirety."

Around 11:00 a.m., the jury sent another note asking, "If we are [a] hung jury on count 1 Instruction 5 can we still make a finding on Count 1 Instruction 6. OR another way of putting it -- If we can't agree on Murder 1 can we still make a decision on murder 2?" Count 1 was the charge for Morales's death. Instruction 5 instructed on first-degree murder for his death and Instruction 6 instructed on second-degree felony murder. The jury was brought into the court room, where the foreperson advised the court that the jury had reached unanimous verdicts on some counts. The jury was released for lunch while an answer to their question about Instructions 5 and 6 was prepared. The court sent a response, to which the parties agreed, stating: "The Court urges the jury to reach unanimous verdicts on all counts in accordance with Instruction 25. However, if you are unable to reach [a] unanimous verdict on Instruction 5, you may then consider whether the defendant is guilty under Instruction 6." The jury resumed its deliberations.

Around 2:30 p.m., the jury advised the court that it had reached a verdict. When the court asked if a verdict had been reached on all counts, the foreperson said it had not. The court then asked if the jury was "hopelessly deadlocked on certain counts, one or more counts." The foreperson replied, "Yes." The jury returned to the jury room while the court discussed the situation with the parties.

The court informed the parties that the bailiff had said that, when he checked on the jurors, "there were jurors that were visibly upset and crying. And one or more jurors

6

had indicated that they're not coming back tomorrow."  Because the jury indicated that it had reached a unanimous verdict on some counts, the court wanted to see if a verdict on those counts could be returned "to avoid a potential mistrial in the entire case."  The court proposed giving the jury a non-MAI instruction, Instruction 27, which was patterned after an Eighth Circuit instruction regarding partial verdicts.  The proposed instruction read:

> Members of the jury, if you have reached unanimous agreement as to some of the counts, you may return a verdict as to those counts, and then continue deliberating on the others.
>
> If you do choose to return a verdict as to some of the counts now, that verdict will be final.  You will not be able to change your minds about it later on.

The court explained that, if the jury came back with a verdict on some counts, the court would then decide whether to declare a mistrial as to the remaining counts.  In response to the court's proposed instruction, Fonville's counsel stated, "I would still prefer to have the hammer instruction given, although, I understand with what we've heard, why the Court thinks that this would be appropriate.  So I don't have an objection to Instruction Number 27 as to form, however, I guess I do object to it in general."  The court sent the instruction to the jury at 2:40 p.m.

At 3:45 p.m., the jury returned a verdict on all counts.  The jury found Fonville guilty of second-degree murder for Morales's death, first-degree murder for Kreiling's death, both counts of armed criminal action, leaving the scene of a motor vehicle accident, and knowingly burning.  Pursuant to the jury's recommendation, the court sentenced Fonville to concurrent terms of fifteen and eight years for the murder of Morales and the associated armed criminal action count, to be served consecutively to

7

concurrent terms of life without probation or parole and ten years for the murder of Kreiling and the associated armed criminal action count; a consecutive term of four years and a $400 fine for leaving the scene of a motor vehicle accident; and one year time served for knowingly burning. Fonville appeals.

## STANDARD OF REVIEW

Fonville asserts only instructional error in this appeal. The decision to submit an instruction to the jury is a matter within the circuit court's discretion. *State v. Davis*, 318 S.W.3d 618, 630 (Mo. banc 2010). Therefore, our review is for an abuse of that discretion. *State v. Watson*, 407 S.W.3d 180, 184 (Mo. App. 2013). Reversal based on instructional error is warranted "where an instruction misled, misdirected, or confused the jury, and the defendant was prejudiced." *Id.*

## ANALYSIS

In his sole point on appeal, Fonville contends the circuit court erred in submitting Instruction 27, a non-approved instruction on partial verdicts. He asserts that Instruction 27 adversely affected the jury by suggesting that jurors should compromise on the counts on which they had reached a verdict in order to reach a verdict on the remaining counts, and the instruction coerced the jury to reach a verdict.

Fonville argues that, when the jury indicated that it was "hopelessly deadlocked" on some counts, the court should have given MAI-CR3d 312.10, the approved hammer instruction, instead of Instruction 27, a non-MAI instruction. Citing Rule 28.02(c), he notes that, whenever there is an applicable approved instruction, it must be used instead of a non-approved instruction.

8

Instruction 27 cannot be characterized as a hammer instruction, however, as it did not serve the same purpose as a hammer instruction. MAI-CR3d 312.10, the approved hammer instruction, advises the jury:

> You should make every reasonable effort to reach a verdict, as it is desirable that there be a verdict in every case. Each of you should respect the opinions of your fellow jurors as you would have them respect yours, and in a spirit of tolerance and understanding endeavor to bring the deliberations of the whole jury to an agreement upon a verdict. Do not be afraid to change your opinion if the discussion persuades you that you should. But a juror should not agree to a verdict that violates the instructions of the Court, nor should a juror agree to a verdict of guilty unless he is convinced of the defendant's guilt beyond a reasonable doubt.

The Notes on Use for MAI-CR3d 312.10 provide that "[t]his instruction may be given when the Court deems it appropriate and when the length of deliberation or communication from the jury causes the Court to believe that the jury may be deadlocked." The plain language of MAI-CR3d 312.10 indicates that the purpose of the hammer instruction is to encourage jurors to reach a verdict and to communicate to jurors the desirability of reaching a verdict in every case. See *State v. Carriker*, 342 S.W.3d 425, 426 (Mo. App. 2011).

Instruction 27 did not contain language encouraging the jury to reach a verdict on any counts on which it was deadlocked. Instead, it simply notified the jury that, if it had reached unanimous agreement on any of the counts, which the jury indicated that it had, then it could return a verdict on those counts if it wanted to do so and then continue deliberating on the other counts. The instruction further advised the jury that, if it chose to return a verdict on some of the counts, that verdict would be final as to those counts. Contrary to Fonville's claim, nothing in Instruction 27 required, or even encouraged, the jury to reach a verdict on all counts. Likewise, we fail to see how the

9

court's merely advising the jury of the finality of a returned verdict on any counts in any way suggested to the jury that it should enter a compromise verdict to break the impasse on the deadlocked counts.

That Instruction 27 did not require or encourage a verdict distinguishes this case from those cases relied upon by Fonville in which non-approved instructions were deemed erroneous because they encouraged the jury to return a verdict and, therefore, should not have been used in lieu of MAI-CR3d 312.10.  See, e.g., *State v. Steward*, 734 S.W.2d 821, 824 (Mo. banc 1987) ("Is it your opinion that any further balloting will arrive at a unanimous verdict on the three counts presented to you because *you have to give me a verdict in order to complete entire* [sic] *work of the jury.  You have to give me a verdict.  Guilty or not guilty on each of the three counts placed against you*." (Emphasis in original.)); *State v. Hayes*, 563 S.W.2d 11, 12 (Mo. banc 1978) ("I admonish this jury to bring back one of these verdicts . . . .").

Because Instruction 27 was not an encouragement to return a verdict on deadlocked counts but served an entirely different purpose of explaining that the jury could return a partial verdict on counts on which it had already unanimously agreed and continue deliberating on the others, it was not a non-approved hammer instruction used in lieu of MAI-CR3d 312.10.  See, e.g., *State v. Bracken*, 333 S.W.3d 48, 56-57 (Mo. App. 2011) (statements instructing the jury to continue deliberations were not the "functional equivalent" of the hammer instruction); *State v. Franklin*, 751 S.W.2d 128, 130 (Mo. App. 1988) (statements instructing the jury to continue deliberations were designed to determine if the jury could reach a verdict and were not used as a substitute for the hammer instruction).

Merely instructing the jury to continue deliberations is not coercive where, as here, the court neither states nor implies:  (1) that the jury will not be released until it returns a verdict; (2) that it must reach a verdict by a certain time; or (3) that it was required to reach a verdict.  *State v. Manley*, 414 S.W.3d 561, 570 (Mo. App. 2013).  Additionally, the circumstances surrounding the deliberations and verdict do not indicate that the verdict was coerced.  The court did not know which counts or how many counts were deadlocked, let alone the split or the direction of the split.  See *State v. Campbell*, 147 S.W.3d 195, 203-04 (Mo. App. 2004).  After the court gave Instruction 27, the jury deliberated for another one hour and five minutes before returning its verdict on all counts.  "'Missouri courts have found that a time period as short as approximately one-half hour was not a sign that the verdict was coerced.'"  *Id.* at 203.  Instruction 27 was not coercive and was not used in place of the applicable approved hammer instruction in violation of Rule 28.02(c).

There is no applicable approved instruction for advising the jury that it can return a partial verdict when it has reached a verdict on some counts but not others.  Where no pattern instruction exists, the court may give a non-MAI instruction as long as it is "simple, brief, impartial, and free from argument" and does not "submit detailed evidentiary facts."  Rule 28.02(d).  See also *Morgan v. State*, 272 S.W.3d 909, 911 (Mo. App. 2009).  Instruction 27 met these requirements and did not misstate Missouri law.  There is no prohibition against a jury returning a partial verdict.  Section 546.390, RSMo 2000, requires that any verdict upon which the jury agrees be rendered in open court and any verdict upon which the jury does not agree be retried.  Thus, Section 546.390 appears to support what the court was trying to do here -- ensure that any counts upon

which a unanimous verdict had been reached be rendered in open court.  See also *State v. Anderson*, 698 S.W.2d 849, 853-54 (Mo. banc 1985) (Blackmar, J., concurring) (indicating that the court should be "mindful" of its "responsibility" to determine whether "there were any prospects for a complete or partial verdict" from a deadlocked jury).

Because Instruction 27 was not the subject of an applicable approved instruction and was simple, brief, free from argument, consistent with the law, and not coercive, the court did not abuse its discretion in giving it to the jury.  Fonville's point is denied.

## CONCLUSION

We affirm the circuit court's judgment.

_____
LISA WHITE HARDWICK, JUDGE

ALL CONCUR.

12