**STATE of Missouri, Respondent,**

v.

**James TAYLOR, Appellant.**

**No. ED 93334.**

Missouri Court of Appeals,
Eastern District,
Division Five.

May 4, 2010.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 23, 2010.

Application for Transfer Denied
Aug. 31, 2010.

---

Brocca Smith, St. Louis, MO, for Appellant.

Christopher Koster, Terrence M. Messonnier, Jefferson City, MO, for Respondent.

ROY L. RICHTER, J.

James Taylor ("Defendant") appeals from the judgment entered on a jury verdict finding him guilty of forcible rape, in violation of section 566.030 RSMo[1], kidnapping, in violation of section 565.110, and first-degree assault, in violation of section 565.050. Finding no error, we affirm.

## I. BACKGROUND

On May 24, 2007, V.W. was in the process of moving out of her eighth floor apartment because police had ordered her building to close. She stopped packing in order to buy liquor at a convenience store, and encountered Defendant on her way home. The two knew each other in passing from the neighborhood, and V.W. asked Defendant to return to her apartment and help her move a desk. Defendant had been banned from V.W.'s building, so V.W. snuck him in the back door to avoid the 24–hour police surveillance.

Once in her apartment, V.W. began drinking the brandy she had purchased at the store. Defendant told her to take her clothes off. V.W. testified that Defendant proceeded to punch her in the head repeatedly and strangle her, causing her to suffer broken ribs and teeth and extensive hemorrhaging. According to V.W.'s testimony, Defendant raped her and tried to have oral and anal sex with her, but was unable to climax. When V.W. lost control of her bowels as a result of the beatings, she testified that Defendant would not let her use the bathroom. V.W. also testified that Defendant made her lick his chest, and threatened her with a knife. She eventually passed out and awoke later to find Defendant sleeping on the couch.

V.W. crawled to the door and made her way to the lobby via the fourth floor elevator. She made contact with Officer Ernest Greenlee in the lobby at approximately 6:30 a.m. Officer Greenlee observed blood on V.W.'s face and requested an ambulance. When more officers arrived at the scene, they went to V.W.'s apartment and found Defendant sleeping naked on the floor. The officers seized a hunting knife and box cutter from V.W.'s apartment, and took multiple swabs from Defendant.

V.W. went to the hospital where emergency room nurse Kathryn Howard ("Howard") performed a sexual assault exam. During the exam, Howard noticed bleeding and abrasions on the inside of V.W.'s vagina in addition to other genital

1. Unless otherwise noted, all statutory references are to RSMo 2000.

trauma. Howard observed bleeding in V.W.'s eyes that was consistent with strangulation.

The State charged Defendant with forcible rape and armed criminal action, two counts of forcible sodomy, kidnapping, and the class A felony of first-degree assault. The jury returned guilty verdicts for forcible rape, kidnapping, and the lesser-included offense of the class B felony of first-degree assault. The jury found Defendant not guilty of the two counts of forcible sodomy and armed criminal action. Defendant appeals.

## II. DISCUSSION

In his first point on appeal, Defendant argues that the trial court erred in overruling his motion for judgment of acquittal as to kidnapping because there was insufficient evidence to support the charge. We disagree.

We review the denial of a motion for acquittal to determine if the state adduced sufficient evidence to make a submissible case. *State v. Brock,* 113 S.W.3d 227, 231 (Mo.App. E.D.2003). In reviewing the sufficiency of the evidence to support the jury's verdict, we look to the elements of the crime and consider each in turn. *State v. Thomas,* 75 S.W.3d 788, 790 (Mo.App. E.D.2002). We must view the evidence in the light most favorable to the state, and grant the state all reasonable inferences therefrom. *Id.* This Court disregards contrary inferences, "unless they are such a natural and logical extension of the evidence that a reasonable juror would be unable to disregard them." *Id.*

Section 565.110 provides, in pertinent part, that "[a] person commits the crime of kidnapping if he or she . . . unlawfully confines another without his or her consent for a substantial period, for the purpose of . . . [i]nflicting physical in-

jury on or terrorizing the victim or another."

Defendant argues that a kidnapping conviction cannot stand when the victim's confinement is incidental to another offense. According to Defendant, his confining V.W. against her will was incidental to the offenses of assault and rape, and therefore he did not commit the independent crime of kidnapping.

"The offense of kidnapping should not be used in situations where the movement or confinement is merely incidental to another offense." *State v. Williams,* 860 S.W.2d 364, 366 (Mo.App. E.D.1993). To determine whether a defendant's moving and confining his victim is incidental to another offense or is sufficient to constitute the offense of kidnapping, "we look to see if there was any increased risk of harm or danger to the victim from the movement or confinement that was not present as the result of the other offense." *Id.* "Increased risk or harm or danger may arise either from the movement itself or from the potential of more serious criminal activity because of the remoteness or privacy of the area to which the victim was moved." *Id.* (quoting *State v. Jackson,* 703 S.W.2d 30, 33 (Mo. App. E.D.1985)).

In *State v. Brock,* 113 S.W.3d 227 (Mo. App. E.D.2003), our Court considered and rejected the same argument that Defendant raises in this point. The *Brock* defendant had prevented his wife from leaving the apartment, and then punched, beat, and choked her. *Id.* at 229. He argued that the State presented insufficient evidence to support his kidnapping conviction because his confining the victim was merely incidental to his assaulting her. *Id.* at 231. This Court disagreed. We stated that, while the state must prove an increased risk or harm or danger to the victim because of the movement or con-

finement, the increased risk need not be inherent in the movement itself. *Id.* Rather, "[t]he additional risk necessary to sustain a conviction of kidnapping may be established by showing that the remoteness or privacy of the area to which the victim was confined created the potential of more serious criminal activity." *Id.* The *Brock* Court found that the victim's confinement in the apartment increased the risk and danger to her because it made her escape more difficult, and the defendant's criminal activity less visible. *Id.* at 232.

Similarly, in *State v. Shelton,* 78 S.W.3d 200 (Mo.App. W.D.2002), the Western District held that the defendant's confining the victim to a hotel room before raping and assaulting her increased the risk of harm because it made the victim's escape more difficult and the defendant's criminal activity more difficult to detect. *Id.* at 204. *See also Williams,* 860 S.W.2d at 366 (upholding defendant's kidnapping and attempted rape convictions where defendant confined the victim to her car before attempting to rape her).

Like *Brock, Shelton,* and *Williams,* the facts of this case are such that Defendant's confining V.W. to her apartment increased the risk of harm to her. Defendant confined V.W. in her apartment against her will, and beat, strangled, and raped her for approximately two hours. V.W. testified that Defendant would not allow her to use the bathroom. Moreover, V.W.'s apartment building had been recently ordered to close, and V.W. was one of few people still living there. According to V.W.'s testimony, she was "literally the last person in that building on the eighth floor." The isolated circumstances in which Defendant held V.W., therefore, increased the risk of harm to her and allowed Defendant's criminal behavior to go unnoticed.

Defendant's confining V.W. to her apartment likewise made her escape more diffi-cult. V.W. testified that she ultimately escaped by crawling down the fire stairs and taking the fourth floor elevator to the lobby; V.W. feared that Defendant might hear the elevator ding if she called it to her floor. Defendant's confining V.W. in her apartment increased the risk of harm or danger to her, and therefore there was sufficient evidence to support the jury's finding Defendant guilty of kidnapping. Point one is denied.

■ In his second point on appeal, Defendant argues that the trial court erred in overruling his objection to the State's direct examination of V.W. Defendant argues that the State's leading questions provided V.W. with the answers to support the elements of forcible rape, which otherwise would have been unproven. We disagree.

■ Whether to allow leading questions in the examination of a witness is within the sound discretion of the trial court. *King v. Copp Trucking, Inc.,* 853 S.W.2d 304, 309 (Mo.App. W.D.1993). We will overturn their decision only if it constituted an abuse of discretion and prejudiced the defendant. *State v. Miller,* 208 S.W.3d 284, 289 (Mo.App. W.D.2006).

V.W. initially testified that Defendant did all sorts of sexual things to her, but that she could not be penetrated. Subsequently, however, the following exchange occurred between the State and V.W.:

Prosecutor: [V.W.], you told us about him putting his penis in your vagina.

Defense: Objection. Leading.

The Court: That will be overruled.

V.W.: He did all different thing you can think of sexual. The intercourse, the sodomies, and I think he even tried to have anal sodomy.

The State returned to the issue later in V.W.'s testimony:

Prosecutor: I want to go back and cover something that I realized in listening to you that I may have missed. You talked about way back in the beginning when you first took the stand, you were telling us about how he was trying to have sex with you. Did that happen?

V.W.: Yeah.

Prosecutor: Okay. So he was able to penetrate you?

V.W.: Yes.

Defense: Objection. Leading.

The Court: That will be overruled.

Defendant argues that the State's leading questions prejudiced him because they enabled V.W. to supply the elements for forcible rape.

We need not decide whether the trial court abused its discretion in allowing the questions because, even assuming they were leading, Defendant cannot prove they prejudiced him. Howard, the emergency room nurse who performed a sexual assault exam on V.W., testified that V.W. exhibited genital trauma. V.W.'s genital trauma, according to Howard, included bleeding and abrasions inside her vagina as well as on her cervix. Howard further testified that V.W. experienced pain when Howard inserted the speculum in her vagina. Howard's testimony provided sufficient evidence for the jury to find that Defendant forcibly raped V.W. Defendant cannot prove that the prosecutor's questions prejudiced him, and therefore point two is denied.

■ In his third point on appeal, Defendant argues that the trial court erred in overruling his objection to the State's line of questioning during voir dire regarding the panel's ability to convict Defendant on the basis of eyewitness testimony alone. Defendant argues that the State's question was misleading in that the State intended to present physical evidence, including DNA, photographs, and medical evidence. We disagree.

■ The trial court is vested with wide discretion in conducting voir dire. *State v. Miller*, 162 S.W.3d 7, 17 (Mo.App. E.D. 2005). We review the trial court's voir dire rulings for an abuse of discretion. *Id.* When a party claims that the trial court abused its discretion regarding voir dire, that party has the burden to show a "real probability" that he was prejudiced by the abuse. *Id.*

During voir dire, the prosecutor questioned the jury panel about their ability to return a guilty verdict without physical evidence and based solely on testimonial evidence. The inquiry proceeded as follows:

Prosecutor: Anyone here feel that if they're not given physical evidence, no matter what the testimonial evidence is, they couldn't consider a guilty verdict?

Defense: Judge, can we approach on this? [...] Judge, in this particular case, this question is misleading because there is physical evidence. There's DNA evidence, there's photographs, there's items seized at the scene.

The Court: So how is the question misleading?

Defense: It suggests that no physical evidence will be presented. Testimony alone. This is not a testimony alone case.

The Court: Is there physical evidence?

Prosecutor: I do intend to present physical evidence....

Defendant argues that the prosecutor's line of questioning was misleading, confusing, and irrelevant. He asserts that the trial court should not have permitted the

State to ask jurors whether they could base their verdict on only eyewitness testimony when the State clearly intended to present physical evidence at multiple stages of the trial.

Defendant is correct in that the State introduced physical evidence at trial, including DNA profiling. The State did not introduce physical evidence, however, to support its forcible sodomy charges. Nor did it introduce physical evidence in support of the armed criminal action charge, because the DNA recovered on the hunting knife was inconclusive as to Defendant. Thus, the question of whether the jury could return a guilty verdict on the basis of testimony alone was not confusing or misleading because the State did not introduce physical evidence to support every aspect of its case. In fact, we note that the jury ultimately acquitted Defendant only of those charges for which the State presented no physical evidence—the two forcible sodomy and armed criminal action counts. Therefore, whether potential jurors could convict based on testimonial evidence alone proved to be a pertinent question.

Moreover, it is well-established that "[c]ounsel is afforded much latitude in probing the venire panel to determine preconceived prejudices which would prevent them from following the court's instructions." *State v. Nicklasson,* 967 S.W.2d 596, 608 (Mo. banc 1998); *State v. Bullock,* 179 S.W.3d 413, 417 (Mo.App. S.D.2005); *State v. Dunn,* 7 S.W.3d 427, 432 (Mo.App. W.D.1999); *State v. Crawford,* 904 S.W.2d 402, 408 (Mo.App. E.D.1995). The transcript clearly reveals that the prosecutor aimed to establish that the jury could follow the court's instruction to determine

whether Defendant was guilty beyond a reasonable doubt, regardless of the form of evidence presented. Established principles permit such questioning.[2] Point three is denied.

### III. CONCLUSION

The judgment of the trial court is affirmed.

KENNETH M. ROMINES, C.J., and GARY M. GAERTNER, JR., J., concur.

---

2. Given the prevalence of television shows such as CSI and Law and Order, a trend exists wherein juries expect the State to present physical evidence on every issue. The

trial court does not err in allowing the State to ferret out such juror biases during voir dire.