STATE of Missouri, Respondent,

v.

Cornell MANLEY, Appellant.

No. ED 97949.

Missouri Court of Appeals, Eastern District, Division Four.

Sept. 24, 2013.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 5, 2013.

Application for Transfer Denied Dec. 24, 2013.

Lisa M. Stroup, Assistant Public Defender, St. Louis, MO, for appellant.

Gregory L. Barnes, Assistant Attorney General, Jefferson City, MO, for respondent.

PATRICIA L. COHEN, Judge.

## Introduction

Cornell Manley (Defendant) appeals the judgment of conviction entered after a jury found him guilty of one count of first-degree murder, two counts of first-degree assault, and three counts of armed criminal action. Defendant claims the trial court: (1) abused its discretion in overruling Defendant's objections when the prosecutor asked the venire panel whether they required certain types of evidence to consider conviction; and (2) plainly erred in failing to declare a mistrial and instructing the jury to continue deliberations. Defendant also filed with this court a motion to remand based on newly discovered evidence, which we took with the case. We deny the motion for remand and affirm the judgment of conviction.

## Factual and Procedural Background

On the afternoon of October 3, 2009, Anthony Dodson picked up Defendant in a maroon Toyota Avalon. Dodson and Defendant stopped at a gas station, and Dodson went inside, where Trevon Sykes verbally confronted and flashed a gun at him. Dodson returned to the maroon Toyota, and Sykes climbed into the driver's seat of a green Pontiac Grand Prix, in which Craig Nichols and Brandon Campbell were waiting. Sykes followed Defendant and Dodson out of the gas station parking lot, and Nichols fired a gunshot at the maroon Toyota.

Sykes, Nichols, and Campbell then picked up Sykes's girlfriend and drove to a Schnucks parking lot where they waited while the girlfriend shopped. From the parking lot, they saw Dodson and Defendant drive by in the maroon Toyota. At this point, Campbell, who was sitting in the driver's seat, drove the car out of the parking lot because he feared retaliation by Defendant and Dodson.

Dodson pursued the green Pontiac while Defendant fired an AK–47 at it. The Pontiac crashed, and Sykes and Campbell climbed out of the driver's-side window and fled on foot. Nichols, who was injured, slowly emerged from the car. Dodson made a u-turn and drove the Toyota onto the sidewalk where Nichols was lying. As Nichols begged Defendant not to kill him, Defendant shot Nichols at least six times. An ambulance transported Nichols to a hospital, where doctors pronounced him dead.

The State charged Defendant as a prior offender with one count of first-degree murder for causing Nichols's death, two counts of first-degree assault for shooting at Sykes and Campbell, and three counts of armed criminal action. The trial court conducted a four-day jury trial at which the State presented the testimony of Dodson, Sykes, Sykes's former counsel, a forensic medical examiner, an evidence technician, police officers involved in the investigation, and an eye-witness to the October 3, 2009 car chase. The defense presented Campbell and re-called two State witnesses to the stand.

The jury found Defendant guilty on all counts, and the trial court sentenced Defendant as a prior offender to concurrent terms of life imprisonment without the possibility of parole for first-degree murder, life imprisonment for each count of armed criminal action, and fifteen years' imprisonment for each count of first-degree assault. Defendant appeals.

## Discussion

### 1. Motion to Remand to the Trial Court

After Defendant filed his appellate brief, he filed in this court a motion to remand

the case to the trial court "for a hearing on whether he is entitled to a new trial because of newly discovered evidence, if relief is not granted on the two points in [his] brief." Defendant attached an affidavit by State's witness Dodson recanting his testimony against Defendant. We ordered the motion taken with the case.

Defendant asserts that Dodson's post-trial affidavit constitutes newly discovered evidence. In the affidavit, Dodson stated:

1. I was the Co–Defendant and witness against Cornell Manley in *State v. Cornell Manley,* Case No. 1022–CR00537–01.

2. The testimony I gave against Cornell Manley was completely falsified.

3. I was threatened and told by the arresting officers that if I did not cooperate in helping them put Cornell Manley away that they would do everything in their power to make sure I never saw the streets again.

4. My true statement and testimony is, on 10–3–09 Cornell Manley's whereabouts were unknown to me, and he had absolutely no involvement in the incident that occurred on the following date.

Defendant argues that if the jury had heard Dodson state that his testimony was false, the jury likely would have found Defendant not guilty. The State counters that the information contained in Dodson's affidavit is neither "newly discovered" nor sufficient to exonerate Defendant.[1]

Defendant did not file his motion within the time limits for filing a motion for new trial pursuant to Rule 29.11(b). "Once the time for filing a motion for a

---

1. We note that, in *State v. Terry,* the Supreme Court held that remand to the trial court so the accused can file a motion for a new trial may be appropriate where the newly discovered evidence will not exonerate the defendant but casts serious doubt on the validity of the conviction. *State v. Terry,* 304 S.W.3d 105, 108, 110 (Mo. banc 2010).

new trial has passed, the Missouri rules have no provision for the granting of a new trial based on newly discovered evidence even if the evidence is available prior to sentencing." *State v. Terry*, 304 S.W.3d 105, 109 (Mo. banc 2010). "Additionally, new evidence that is not in the record should not be considered on appeal." *Id.* "Generally, this Court will not remand a case before an appeal is concluded if the lone fact of newly discovered evidence is not enough to grant a new trial." *Id.* However, this court has "the inherent power to prevent a miscarriage of justice or manifest injustice by remanding a case to the trial court for consideration of newly discovered evidence presented for the first time on appeal," and this court will exercise this power in its discretion. *Id.*

■ To obtain a new trial on the basis of newly discovered evidence, a movant must show that: (1) the facts constituting the newly discovered evidence came to the movant's knowledge after the end of the trial; (2) the movant's lack of prior knowledge did not result from want of due diligence on his part; (3) the evidence is so material that it is likely to produce a different result at a new trial; and (4) the evidence is neither cumulative only nor merely of an impeaching nature. *Terry*, 304 S.W.3d at 109. "Such claims succeed *very rarely*." *State v. Hannon*, 398 S.W.3d 108, 113 (Mo.App. E.D.2013) (quotation omitted) (emphasis in original).

■ Assuming *arguendo* that Defendant established the first, second, and fourth elements required to succeed on his motion to remand for a new trial on the basis of newly discovered evidence, he failed to demonstrate the existence of the third element. To satisfy the third prong, Defendant must show that the alleged newly discovered evidence "is so material that it is likely to produce a different result at a new trial." *Terry*, 304 S.W.3d

at 109. To be deemed likely to produce a different result at a new trial, the evidence must be: (1) credible; and (2) "reasonably sufficient to raise a substantial doubt in the mind of a reasonable person as to the result of a new trial." *Hannon*, 398 S.W.3d at 114 (quoting *State v. Stewart*, 313 S.W.3d 661, 666 (Mo. banc 2010)).

■ Defendant does not allege or otherwise demonstrate that Dodson's affidavit is credible. Testimony from a co-defendant who, after trial, is willing to exonerate the defendant "has an inherent lack of credibility" because "[a]t the time that the co-defendant signifies his willingness to testify, he has been convicted and thus cannot be harmed by testifying untruthfully about the alleged innocence of the defendant seeking a new trial." *State v. Magee*, 911 S.W.2d 307, 312–13 (Mo.App. W.D.1995) (citing *State v. Hamilton*, 732 S.W.2d 553, 556 n. 3 (Mo.App. E.D.1987)). Moreover, "[r]ecanting testimony is exceedingly unreliable and is regarded with suspicion...." *State v. Culkin*, 791 S.W.2d 803, 814 (Mo.App. E.D.1990) (quoting *State v. Harris*, 428 S.W.2d 497, 501 (Mo.1968)). Defendant's motion to remand for a new trial based on newly discovered evidence is silent as to why this court should not view Dodson's recantation with suspicion. *See, e.g., Harris*, 428 S.W.2d at 501 ("There is no reason for us to accept what the affidavits say in preference to what affiants said when they testified at defendant's trial.").

■ Even if Dodson's affidavit were credible, it is not reasonably sufficient to raise a substantial doubt in the mind of a reasonable person as to the result of a new trial because the State presented considerable evidence at trial that corroborated Dodson's testimony. Officer Charles Betts testified that, in interviews after the shooting, Dodson and Sykes each described the incident similarly and identified Defendant

as the shooter. Officer Betts also stated that "wheel marks and ballistic evidence" corroborated Dodson's and Sykes's statements. In addition, video footage from the security camera at the gas station where Defendant and Dodson originally encountered the victims showed Dodson driving away in a maroon Toyota and Sykes following in a green Pontiac, as described by Dodson and Sykes. *Cf. Stewart*, 313 S.W.3d at 667 (newly discovered evidence of statements by defendant's brother-in-law, coupled with newly confirmed DNA evidence linking the brother-in-law to the crime scene, raised a substantial doubt warranting a new trial). The motion to remand is denied.

## 2. Points on Appeal

### a. Voir Dire

In his first point on appeal, Defendant claims the trial court abused its discretion in overruling Defendant's objections when the prosecutor asked whether the venirepersons: (1) required scientific evidence, in addition to testimonial evidence, to convict Defendant; and (2) could make a decision without knowing a motive for the shooting. Defendant asserts that the prosecutor's questions violated his right to an impartial jury and a fair trial by disclosing non-critical facts about the case. The State counters that the trial court did not err in overruling Defendant's objections because "counsel is afforded broad latitude in probing the venire panel to determine preconceived prejudices which would prevent them from following the court's instructions."

"A trial judge is vested with discretion to judge the appropriateness of specific questions and has wide discretion in the conduct of voir dire." *State v. Lutz*, 334 S.W.3d 157, 163 (Mo.App. S.D.2011) (citing *State v. Baumruk*, 280 S.W.3d 600, 614 (Mo. banc 2009)). We review the trial court's voir dire rulings for an abuse of discretion. *State v. Taylor*, 317 S.W.3d 89, 94 (Mo.App. E.D.2010). A party claiming that the trial court abused its discretion in voir dire has the burden to show a "real probability" that he was prejudiced by the alleged error. *Id.* (quotation omitted).

"The purpose of voir dire is to discover bias or prejudice in order to select a fair and impartial jury." *State v. Clark*, 981 S.W.2d 143, 146 (Mo. banc 1998). "[A]s venirepersons do not always recognize or easily give up their biases or predispositions," the trial court enjoys a liberal latitude in conducting voir dire and considers all questions in context. *State v. Ezell*, 233 S.W.3d 251, 253 (Mo.App. W.D. 2007). "Some inquiry into relevant and critical facts of the case is essential to the search for bias." [2] *Id.* However, "[c]ounsel is not permitted to try the case during jury selection and, thus, argument or a presentation of the facts in explicit detail is inappropriate." *In re Wolfe*, 291 S.W.3d 829, 832–33 (Mo.App. W.D.2009) (quotation omitted).

Defendant bases his claim of error on two lines of questioning that the prosecutor pursued during voir dire. First, Defendant contends that the trial court erred in overruling his objection to the prosecutor's question about scientific evidence on the grounds that the State's lack of such evidence "was not a critical fact" because, contrary to the prosecutor's suggestions during voir dire, the State did present scientific evidence at trial.[3]

**2.** "Critical facts" are those with "a substantial potential for disqualifying bias." *State v. Edwards*, 116 S.W.3d 511, 529 (Mo. banc 2003) (quotation omitted).

**3.** Specifically, the State presented the testimony of the forensic pathologist who completed Nichols's autopsy, as well as an evidence

During voir dire, the prosecutor explained the difference between physical and testimonial evidence and stated, "One type of evidence isn't necessarily under the law better than another type." The prosecutor then asked the venire:

Now, a lot of you folks might be thinking, "Well, it's a criminal case. I watch Court TV. I see things that come on TV a lot and I'm expecting a certain type of evidence." You might have that in the back of your mind. You might be thinking, "I'm expecting some type of scientific evidence, DNA or fingerprints or something like that."

Is there anybody here who, just sitting here right now hearing the charges in this case, is thinking, "I'm going to require the state to put on fingerprints or DNA before I can deliberate and reach a guilty verdict"? Anybody over here going to require scientific testimony of some type, whether it's DNA or fingerprints?

After a venireperson expressed her need to see physical evidence,[4] the following exchange occurred:

[PROSECUTOR]: And when you're referring to physical evidence, do you have a specific type of evidence that you're—
[VENIREPERSON]: Just I would have a really hard time with that. I would struggle with that, with just testimony or circumstantial. I'm married to a scientist, so—
[PROSECUTOR]: So for you—and you said when I mentioned, you're talking about you would need to see something like DNA or fingerprints?
[VENIREPERSON]: (Nodding head.)
[PROSECUTOR]: Have you answer out loud, I'm sorry.

[VENIREPERSON]: Yes. I'm sorry, yes.
[PROSECUTOR]: And so without having heard anything and there's no wrong answer here, in your mind in a criminal case and what you said, "I'm married to a scientist, I need to see something more. Testimony is not enough and, you know, I need to see something that's scientific, that's going to put me able to participate and return a guilty verdict."
[VENIREPERSON]: Yes.
[DEFENSE COUNSEL]: Objection. Depending on the facts.
[COURT]: Overruled.

Due to the popularity of crime drama television series, jurors at criminal trials often expect the State to present physical or scientific evidence on every issue. *Taylor*, 317 S.W.3d at 95, n. 2. As a result, a "trial court does not err in allowing the State to ferret out such juror bias during voir dire." *Id.* It is clear from the transcript that the purpose of the prosecutor's questions was to test the jurors' prejudice about testimonial evidence and "establish that the jury could follow the court's instruction to determine whether Defendant was guilty beyond a reasonable doubt, regardless of the form of evidence presented." *Id.* at 95. The prosecutor did not seek a pledge or ask for speculation about a contingency. *See, e.g., id.; State v. Dunn*, 7 S.W.3d 427, 432–33 (Mo.App. W.D.1999); *State v. McCain*, 845 S.W.2d 99, 101 (Mo.App. E.D.1993). Furthermore, the venireperson's responses transcribed above show that the prosecutor's questions effectively revealed juror bias against testimonial evidence. Finally, although Defendant correctly points out that the State introduced medical and ballistic

---

technician and a firearms examiner who analyzed the ballistic evidence.

4. After voir dire, the trial granted the prosecutor's motion to strike for cause this venireperson.

evidence, the prosecutor's question focused on fingerprint and DNA evidence, which the State did not present at trial.

■■■ Defendant also claims the prosecutor improperly asked the venire whether they would require motive evidence to convict Defendant of the charged offenses. Defendant challenges the following questions posed by the prosecutor:

[PROSECUTOR]: ... I don't anticipate that in any instruction given by the court that the court is going to require the state to prove motive, because that's not an element of the offense. And the reason I tell you that is—is I expect that you'll hear evidence in this case that gives you ideas and gives you information about what happened that day, but most people, you know, think about criminal cases, they want to hear all this intricate details about why something happened.

Sometimes that information just isn't there. Sometimes that information on why something happened, why a crime happened, you may not get that information, but that doesn't mean that the state can't meet its burden of firmly convincing you. Does that make sense to everybody? Because unless there's an element of that offense that says this is why this happened, the state doesn't have to prove that to you. Does that make sense to everybody?

Hearing that, is there anybody here that's thinking "Listen, this is a murder case. It's a criminal case. I need to know the why. I need to know what the motive is. And if I don't know what the motive is, I can't make a decision. It's a serious case." Is there anybody here who's thinking, "I can't do that"? Anybody over here?

[DEFENSE COUNSEL]: I'm going to object to the question as a commitment on the facts.

[COURT]: Overruled.

Defendant maintains that the prosecutor's question disclosed a non-critical fact because the State did present evidence of Defendant's motive for killing Nichols and shooting at Sykes and Campbell—namely, retaliation for Sykes's verbally confronting and flashing a gun at Dodson, for the three men chasing Defendant and Dodson, and for Nichols firing a gun at the car in which Defendant was riding.

"[I]t is necessary for the prosecutor [during voir dire] to establish exactly what the potential jurors associate with the prosecutor's burden of proof." *McCain*, 845 S.W.2d at 101. Here, the prosecutor correctly stated that motive was not an element of the charged offenses and asked whether any potential jurors would, nonetheless, require evidence of motive. Neither a negative nor an affirmative answer to this question "could reasonably be construed as committing a prospective juror to a particular course of action, i.e., to convict or acquit, or to give credibility and weight to the testimony of any particular witness." *State v. Reed*, 629 S.W.2d 424, 427 (Mo.App. W.D.1981). To the contrary, the purpose of the prosecutor's question was to determine whether the venire could follow the trial court's instructions and recognize the State's burden to prove all elements of the charges beyond a reasonable doubt. Based on our review of the record, we conclude that Defendant failed to demonstrate a reasonable probability that he was prejudiced by the prosecutor's allegedly improper questions during voir dire. Point denied.

### b. Coerced Verdict

In his second point on appeal, Defendant claims the trial court erred in failing to declare a mistrial and directing the jurors to continue deliberations after the jury

reported that two jurors were unable to reach a decision and requested guidance from the court. Defendant asserts that, as a result of the alleged error, "the jurors' verdict was coerced." The State counters that the trial court's instruction was not coercive because, after receiving the instruction, the jury deliberated two hours before returning a verdict.

Defendant concedes that he did not preserve this issue for appellate review and requests that we review his claim for plain error pursuant to Rule 30.20. To prevail on a claim of plain error, Defendant must demonstrate that "the action of the trial court was not only erroneous, but that the error so substantially impacted upon his rights that manifest injustice or a miscarriage of justice will result if the error is left uncorrected." *State v. Johnson*, 968 S.W.2d 686, 691 (Mo. banc 1998). "If the error did not have a decisive effect on the jury's verdict, there has been no plain error." *State v. Greenlee*, 327 S.W.3d 602, 616 (Mo.App. E.D.2010) (quotation omitted).

"Coercion of a guilty verdict constitutes error." *Id.* "A verdict is considered coerced when, under the totality of the circumstances, it appears that the trial court virtually directed that a verdict be reached and implied that it would hold the jury until it returned a verdict." *Smith v. State*, 276 S.W.3d 314, 318 (Mo.App. E.D. 2008). Urging the jury to reach a verdict by a certain time or telling the jury that it is required to reach a verdict is also deemed coercive. *See id.* "A reversal is required if it is conceivable that a challenged instruction coerced the jury into returning a verdict, and nothing in the record is available to find otherwise." *Greenlee*, 327 S.W.3d at 616.

The record reveals that the jury retired to deliberate at 4:10 p.m. on Thursday, June 30, 2011. At approximately 5:30 p.m., the jury submitted a question to the trial court requesting that it continue deliberations the following day, explaining that "the jury would like to sleep on it . . . and that there are also some child care issues." The court granted the request and recessed for the evening.

The jury resumed deliberations at 9:05 a.m. on Friday, July 1, 2011. At 12:30 p.m., the jury requested the surveillance video recovered from the gas station. The trial court provided the video, and the jury resumed deliberations at 12:50 p.m. At 2:20 p.m., the jury submitted the following note to the trial court: "We have ten jurors with a decision and two jurors who cannot make a decision. We could use some guidance." The trial court read the note and stated:

It's my preference at this point not to do a hammer. They've only been out—I shouldn't say only, but they've been out yesterday since 4:15, today since approximately 9:05. So I'm more inclined to have them stay and continue to deliberate until I get more information, if any, from them that they are unable to reach a decision.

The trial court instructed the jury: "You will be guided by the evidence as you remember it. Continue in your deliberations." The jury resumed deliberating at 2:40 p.m. and returned its verdict at 4:50 p.m.

Defendant has not alleged, much less demonstrated, that the trial court "stated or implied that the jury would not be released until it returned a verdict, that it must reach a verdict by a certain time, or that it was required to reach a verdict, all acts which are deemed coercive." *Greenlee*, 327 S.W.3d at 617. The trial court's instruction did not require the jury to reach a verdict but merely to continue deliberations. *See, e.g., id.* at 616–17;

*State v. Saunders*, 318 S.W.3d 745, 750 (Mo.App. W.D.2010).

Furthermore, the circumstances surrounding the jury's deliberations and verdict do not suggest that the jury's verdict was coerced. The jury deliberated over six hours before it wrote the note to the trial court indicating that it was deadlocked. After the court responded with its instruction to continue deliberations, the jury deliberated for approximately an additional two hours and ten minutes. "Missouri courts have found that a time period as short as approximately one-half hour was not a sign that the verdict was coerced." *State v. Campbell*, 147 S.W.3d 195, 203 (Mo.App. S.D.2004). Also, while the trial court knew the numerical split of the jurors' vote, it did not know the position of the majority.[5] *See, e.g., id.* Based on the above, we find neither manifest injustice or nor a miscarriage of justice resulted from the trial court's instruction to the jury to continue deliberating and failure to declare a mistrial. Point denied.

### Conclusion

The Defendant's motion to remand on the basis of newly discovered evidence is denied and the judgment of conviction is affirmed.

LISA S. VAN AMBURG, P.J., and GARY M. GAERTNER, JR., J., concur.

---

5. Defendant suggests that the trial court coerced the jury to return a guilty verdict because it issued its instruction on the Friday afternoon preceding a holiday weekend. Defendant cites no authority for the proposition that instructing a jury to continue deliberations before a holiday weekend is necessarily coercive.