

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

JOSIAH S. WRIGHT,                )
                                     )
            Appellant,          )
                                     )
      v.                     )         WD86433
                                     )
STATE OF MISSOURI,       )        Opinion filed:  January 21, 2025
                                     )
           Respondent.      )

### APPEAL FROM THE CIRCUIT COURT OF
### JACKSON COUNTY, MISSOURI
### THE HONORABLE CHARLES H. MCKENZIE, JUDGE

Division Two:  Alok Ahuja, Presiding Judge,  Edward R. Ardini, Jr., Judge
and W. Douglas Thomson, Judge

Josiah Wright ("Wright") appeals from the motion court's judgment denying his amended Rule 29.15 motion for postconviction relief following an evidentiary hearing.[1]  Wright raises one Point on Appeal.  He claims the motion court clearly erred in denying Claim 8/9(b) of his amended motion because "appellate counsel renders ineffective assistance in failing to raise an apparent and nonfrivolous claim on appeal, in that the *Batson*[2] claim as to Venireperson 47 was apparent from the

---

[1] All rule references are to Missouri Supreme Court Rules (2021).
[2] *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

record, known to appellate counsel, and was nonfrivolous with a reasonable likelihood of success on the merits." We affirm.

## Factual and Procedural History

Wright was convicted of attempted assault in the first degree following a jury trial. Relevant to this appeal is the State's peremptory strike of Venireperson 47 during the jury selection process. Following the State's voir dire, defense counsel questioned venirepersons who had yet to speak, including Venireperson 47:

> [DEFENSE COUNSEL]: Juror No. 47, what do you like to do with your free time?
>
> VENIREPERSON NO. 47: I watch a lot of TV, crossword puzzles and word searches.
>
> [DEFENSE COUNSEL]: Do you have a favorite TV show?
>
> VENIREPERSON NO. 47: Criminal Minds, Law and Order SVU.

When the State later exercised one of its peremptory strikes to remove Venireperson 47, defense counsel raised a *Batson* objection and identified Venireperson 47 as African-American. As its reason for striking Venireperson 47, the State explained:

> Juror No. 47 indicated that she reads criminal – watches Criminal Minds and Law & Order, SVU and those are her favorite TV shows. And I believe we had struck some other people who we didn't know much about. And also we just knew that they read mystery books and crime books. I'm sorry, I don't have the number right now.

Defense counsel responded by initially identifying Venirepersons 12 and 24 as similarly situated Caucasian jurors that the State had not moved to strike, but after correction by co-counsel, defense counsel identified only Venireperson 24:

[DEFENSE COUNSEL]: Judge, there were similarly-situated jurors that did not say anything other than they liked to read dramas, fantasies, or historical fiction. Those jurors are 12 and 24. I believe they are both Caucasian. The State did not move to strike either one. In fact, I believe they're both on the jury panel.

[CO-COUNSEL]: No. 12 is not.

[DEFENSE COUNSEL]: Okay, just 24 then, Judge.

The State then added to its explanation for striking Venireperson 47: "I think another thing we were worried about is we didn't know anything about her other than the fact that she likes to read books. That was the case with Juror 36 as well. All we know is she likes to play softball." In response, defense counsel pointed to Venireperson 8 as a similarly situated non-struck Caucasian juror, stating "all I have in my notes is that she likes to read novels. She has no favorite authors." The State then clarified:

> [I]t was the fact that we didn't know much about her, but the only thing we know about her is she reads crime novels that she watches Criminal Minds and she watches Law & Order, SVU. And that would probably put an unfair expectation on what she might see in this case.

Defense counsel offered no further arguments. The trial court overruled the *Batson* challenge as to Venireperson 47. Venirepersons 8, 12, and 24 ultimately served on the jury.

Following the jury's verdict, Wright filed his Motion for Judgment of Acquittal Notwithstanding the Verdict of the Jury or, in the Alternative, for a New Trial and raised therein the strike of Venireperson 47 as a ground for a new trial. The trial court denied the motion and sentenced Wright to eighteen years in the Missouri Department of Corrections.

Our court affirmed the conviction in an order-memorandum, and we issued our mandate on November 17, 2021. The only issue raised by Wright in his direct appeal was that the trial court abused its discretion in overruling Wright's objections to, and not limiting, the testimony of two witnesses concerning the victim's condition in the months following the assault. Following the issuance of our mandate, Wright timely filed a *pro se* Motion to Vacate, Set Aside or Correct the Judgment or Sentence pursuant to Rule 29.15. Counsel was appointed on February 8, 2022, and an amended motion was timely filed on June 8, 2022.[3]

Within the amended motion, Wright included Claim 8/9(b), which challenged the effectiveness of his appellate counsel when she failed to raise a claim on appeal challenging the trial court's overruling of the *Batson* objection to the peremptory strike of Venireperson 47. With respect to appellate counsel's performance, Wright argued that "[b]ecause the claim actually brought on appeal was so weak, and because the *Batson* claim was meritorious, it was unreasonable for appellate counsel not to have raised the *Batson* claim on appeal." More

---

[3] We acknowledge that pursuant to a recent decision from our Eastern District, *Smith v. State*, 697 S.W.3d 617 (Mo. App. E.D. 2024), the version of Rule 29.15 in effect at the time of Wright's sentencing would govern, which would render Wright's amended motion untimely filed. However, for the reasons recently explained by our court in *Scott v. State*, No. WD86373, 2024 WL 4887460 (Mo. App. W.D. Nov. 26, 2024), we choose not to follow *Smith* and instead apply the version of Rule 29.15 that was in effect throughout the entirety of Wright's postconviction proceedings. *Id.* at *5, n.5. This was the version in effect from November 4, 2021 through June 30, 2023. Under that version of Rule 29.15, Wright was required to file his amended motion by June 8, 2022, which he accomplished, making the filing of his amended motion timely. *See also Nelson v. State*, No. WD86556, 2024 WL 4940507, at *2 n.4 (Mo. App. W.D. Dec. 3, 2024). Because the opinion declines to follow the Court's prior opinion in *Smith v. State*, 697 S.W.3d 617 (Mo. App. E.D. 2024), the opinion has been reviewed and approved by order of the Court *en banc*. *See* S.Ct. Operating Rule 22.01; Special Rule 31.

specifically, Wright contended that "appellate counsel cannot be said to have strategically forgone the preserved *Batson* challenge for the strike against Venireperson 47 in favor of presenting a stronger argument[,]" as the "argument presented on appeal was precluded by longstanding Missouri caselaw, failed to even acknowledge that caselaw, and made no argument for changing the rules established by those cases."

Concerning the merits of the *Batson* challenge, Wright first asserted that "the State's assertion of [Venireperson 47's] affinity for crime novels cannot suffice as a non-racial reason for the peremptory strike, because she did not state that she reads crime novels." Wright also argued that Venirepersons 12 and 24 were similarly situated white jurors who were not struck. Wright thus argued,

> The *Batson* claim for Venireperson 47's dismissal was strong, preserved on appeal, and easily constructed from a review of the factual records of the case. By failing to brief the issue, appellate counsel's performance fell below the objectively reasonable standard to which Mr. Wright was entitled, and she rendered deficient performance in his defense on appeal.

In arguing he was prejudiced by this deficient performance, Wright similarly asserted that "the State's justifications for the peremptory strike were clearly not applied to similarly-situated white venirepeople." He therefore claimed that "had appellate counsel raised and briefed the *Batson* challenge to Venireperson 47's dismissal, it is likely that the Court of Appeals would have reversed the decision of the trial court and remanded for a new trial."

An evidentiary hearing on Wright's amended motion was held on February 3, 2023. In pertinent part, appellate counsel testified she identified and considered

raising the preserved *Batson* issue, but did not do so "[b]ecause the prosecutor gave a succinct race neutral reason for striking panelist No. 47." She thought the claim "lacked merit[.]" Appellate counsel testified she is familiar with *Batson* and the legal principle it sets forth, having previously raised *Batson* claims that were all ultimately unsuccessful. She explained the standard of review for *Batson* claims is clear error, which is "a very deferential standard of review." Appellate counsel believed "some arguments can be better made than others" and she also believed that she raised Wright's "strongest claim on appeal."

The motion court denied Wright's amended motion. Wright appeals.

## Standard of Review

Our review of the denial of a Rule 29.15 motion is "limited to a determination of whether the findings and conclusions of the trial court are clearly erroneous." Rule 29.15(k). "'A judgment is clearly erroneous when, in light of the entire record, the court is left with the definite and firm impression that a mistake has been made.'" *Shockley v. State*, 579 S.W.3d 881, 892 (Mo. banc 2019) (quoting *Swallow v. State*, 398 S.W.3d 1, 3 (Mo. banc 2013)). The findings of the motion court are presumed correct. *Id.* (citing *Johnson v. State*, 406 S.W.3d 892, 898 (Mo. banc 2013)). We also defer to "'the motion court's superior opportunity to judge the credibility of witnesses.'" *Id.* (quoting *Barton v. State*, 432 S.W.3d 741, 760 (Mo. banc 2014)). "The movant has the burden of proving the movant's claims for relief by a preponderance of the evidence." Rule 29.15(i).

6

## Analysis

In his Point, Wright claims the motion court clearly erred in denying Claim 8/9(b) of his amended motion "because appellate counsel renders ineffective assistance in failing to raise an apparent and nonfrivolous claim on appeal, in that the *Batson* claim as to Venireperson 47 was apparent from the record, known to appellate counsel, and was nonfrivolous with a reasonable likelihood of success on the merits."

"To be entitled to post-conviction relief for ineffective assistance of counsel, a movant must show by a preponderance of the evidence his or her . . . counsel failed to meet the *Strickland* test to prove his or her claims." *Shockley*, 579 S.W.3d at 892 (citing *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). Specifically, "a movant must show by a preponderance of the evidence that (1) his attorney failed to exercise the customary skill and diligence that a reasonably competent attorney would perform under similar circumstances, and (2) he was prejudiced thereby." *Tate v. State*, 461 S.W.3d 15, 21 (Mo. App. E.D. 2015) (citing *Sanders v. State*, 738 S.W.2d 856, 857 (Mo. banc 1987)).

> The standard for reviewing a claim of ineffective assistance of appellate counsel is essentially the same as that used in a claim against trial counsel. *Mallett v. State*, 769 S.W.2d 77, 83 (Mo. banc 1989). To satisfy the performance prong of the *Strickland* test, a movant must overcome the strong presumption that appellate counsel provided adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *McCain v. State*, 317 S.W.3d 657, 660 (Mo. App. S.D. 2010). To overcome this presumption, a movant must show that appellate counsel "failed to assert a claim of error which would have required reversal had it been asserted and which was so obvious from the record that a competent

7

and effective attorney would have recognized and asserted it." *Reuscher v. State*, 887 S.W.2d 588, 591 (Mo. banc 1994).

*Id.* at 22. "Appellate counsel is granted considerable professional leeway in deciding which issues to raise on appeal." *McAllister v. State*, 643 S.W.3d 124, 131 (Mo. App. E.D. 2022) (citation omitted). In this instance, Wright must demonstrate "that, in light of the circumstances, [appellate] counsel's decision not to raise a *Batson* claim on appeal was not a reasonable legal strategy." *Tate*, 461 S.W.3d at 22 (citing *Strickland*, 466 U.S. at 689, 104 S.Ct. 2025). "[A]ppellate counsel has no duty to raise every non-frivolous claim on appeal." *Id.* (citing *Jones v. Barnes*, 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983)). "Further, appellate counsel will not be held ineffective for failing to raise a meritless claim." *McAllister*, 643 S.W.3d at 136 (citing *Tisius v. State*, 519 S.W.3d 413, 432 (Mo. banc 2017)).

"To satisfy the prejudice prong, the movant must demonstrate that the claimed error was sufficiently serious that, if it had been raised, there is a reasonable probability the outcome of the appeal would have been different." *Tate*, 461 S.W.3d at 22 (citing *Tisius v. State*, 183 S.W.3d 207, 215 (Mo. banc 2006)). "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *McAllister*, 643 S.W.3d 131 (quoting *Hays v. State*, 360 S.W.3d 304, 309 (Mo. App. W.D. 2012)).

"A movant must satisfy both the performance prong and the prejudice prong to prevail on an ineffective assistance of counsel claim. In reviewing such a claim, we are not required to consider both prongs; if the movant fails to satisfy one

prong, we need not consider the other." *Tate*, 461 S.W.3d at 22 (citing *Sanders*, 738 S.W.2d at 857).

In denying Claim 8/9(b), the motion court determined appellate counsel was not ineffective because her "analysis of Movant's *Batson* claim reasonably concluded that it lacked merit, and her decision to forgo a meritless claim on appeal does not constitute deficient performance." In so holding, the motion court found "Appellate Counsel's testimony credible and supported by the record before the Court." The motion court further determined that Wright was not prejudiced, as "the record supports Appellate Counsel's determination that the *Batson* claim was without merit."

Specifically, the motion court found "the State provided a legitimate, race-neutral explanation for striking Venireperson 47." The court noted that trial counsel attempted to show pretext by initially identifying two Caucasian venirepersons who were similarly situated, but that his co-counsel corrected him as to one of these venirepersons. Significantly, the motion court found that "[o]f the two who he initially argued were similarly situated Caucasians, only one Venireperson 24, was indeed a Caucasian who Trial Counsel was arguing was similarly situated to Venireperson 47 but was not stricken by the State." The court then found:

> Movant's Trial Counsel was unable to show that the State's decision to strike [V]enireperson 47 was racially motivated because the State had provided a race neutral explanation and because Venireperson 24 was not similarly situated based on a comparison of the answers [Venirepersons] 24 and 47 provided during voir dire.

9

The motion court thus held that "[b]ecause Movant has not shown a reasonable probability the *Batson* claim would have been meritorious on appeal had Appellate Counsel raised it, he has established neither deficient performance nor resulting prejudice." We agree.

"The Equal Protection Clause of the United States Constitution prohibits a party from using a peremptory challenge to remove a potential jury member solely on the basis of gender, ethnic origin, or race." *Tate*, 461 S.W.3d at 23 (citing *United States v. Martinez-Salazar*, 528 U.S. 304, 315, 120 S.Ct. 774, 145 L.Ed.2d 792 (2000)). In making a *Batson* challenge, the following procedure must be followed:

> First, the defendant must raise a *Batson* challenge with regard to one or more specific venirepersons struck by the state and identify the cognizable racial group to which the venireperson or persons belong. The trial court will then require the state to come forward with reasonably specific and clear race-neutral explanations for the strike. Assuming the prosecutor is able to articulate an acceptable reason for the strike, the defendant will then need to show that the state's proffered reasons for the strikes were merely pretextual and that the strikes were racially motivated.

*State v. Bateman*, 318 S.W.3d 681, 689 (Mo. banc 2010) (quoting *State v. Parker*, 836 S.W.2d 930, 939 (Mo. banc 1992)) (other citation omitted).

"The ultimate issue to be decided under *Batson* is whether defendant has shown pretext[.]" *Id.* at 690. This issue "is determined by the prosecutor's stated reasons for the strike at the time of the *Batson* inquiry." *Id.* This means "looking at 'the plausibility of the prosecutor's explanations in light of the totality of the facts and circumstances surrounding the case[.]'" *Id.* (quoting *Parker*, 836 S.W.2d at 939). As such, a "variety of factors" must be considered "[i]n determining whether the defendant has carried the burden of proof and established the existence of

purposeful discrimination." *Id.* (alteration in original) (quoting *Parker*, 836 S.W.2d at 939) (other citation omitted). "[O]ne of the most telling and common means of showing pretext is by showing that similarly situated venirepersons are treated differently[.]" *Id.* at 689 (citing *State v. McFadden*, 191 S.W.3d 648, 651 (Mo. banc 2006)). "Evidence of purposeful discrimination is established when the stated reason for striking an African-American venireperson applies to an otherwise-similar member of another race who is permitted to serve." *Id.* at 689-90 (quoting *McFadden*, 191 S.W.3d at 651). However, "proof of a similarly situated Caucasian juror is not required in order to make a successful *Batson* challenge." *Id.* at 690. Indeed, "[t]he lack of a similarly situated Caucasian juror is not dispositive." *Id.*

> Other factors the court considers include the logical relevance between the State's proffered explanation and the case to be tried, the prosecutor's credibility based on his or her demeanor or statements during voir dire and the court's past experiences with the prosecutor, and the demeanor of the excluded venireperson. Finally, the court can consider objective factors bearing on the State's motive to discriminate on the basis of race, such as conditions prevailing in the community and the race of the defendant, the victim, and the material witnesses.

*State v. Johnson*, 207 S.W.3d 24, 35 (Mo. banc 2006) (internal citations omitted).

Importantly, "'[o]n appeal, we do not consider grounds for *Batson* challenges that were not raised in the trial court.'" *State v. Murray*, 428 S.W.3d 705, 712 (Mo. App. E.D. 2014) (quoting *State v. Broom*, 281 S.W.3d 353, 356 (Mo. App. E.D. 2009)) (other citation omitted); *see also State v. Johnson*, 220 S.W.3d 377, 383 (Mo. App. E.D. 2007). This includes declining to review arguments of pretext raised for the first time on appeal. *See State v. Collins*, 290 S.W.3d 736,

11

742 n.4 (Mo. App. E.D. 2009). *See also State v. Jackson*, 636 S.W.3d 908, 917 (Mo. App. W.D. 2021) (citing *State v. Harris*, 516 S.W.3d 461, 467 (Mo. App. E.D. 2017)); *State v. Nylon*, 311 S.W.3d 869, 882-83 (Mo. App. E.D. 2010); *State v. Clark*, 280 S.W.3d 625, 631 (Mo. App. W.D. 2008) (holding that new pretext arguments will not be considered for the first time on appeal).

Here, the record clearly reflects that the *Batson* claim, if raised, would not have been meritorious. In striking Venireperson 47, the State initially provided two race-neutral explanations, stating first that Venireperson 47 "watches Criminal Minds and Law & Order, SVU and those are her favorite TV shows[,]" and second, that the State "had struck some other people who we didn't know much about. And also we just knew that they read mystery books and crime books." The burden then shifted to Wright to demonstrate that the State's proffered reasons were merely pretextual and that the strike was racially motivated. Subsequently, the following exchange took place:

> [DEFENSE COUNSEL]: Judge, there were similarly-situated jurors that did not say anything other than they liked to read dramas, fantasies, or historical fiction. Those jurors are 12 and 24. I believe they are both Caucasian. The State did not move to strike either one. In fact, I believe they're both on the jury panel.
>
> [CO-COUNSEL]: No. 12 is not.
>
> [DEFENSE COUNSEL]: Okay, just 24 then, Judge.
>
> [THE STATE]: Your Honor, sorry. If I may add something to it?
>
> THE COURT: If you're still making your explanation yes, sir.
>
> [THE STATE]: Yes, Your Honor. I think another thing we were worried about is we didn't know anything about her other than the fact that

12

she likes to read books. That was the case with Juror 36 as well. All we know is she likes to play softball.

[DEFENSE COUNSEL]: Judge, [Venireperson] 8, white female, all I have in my notes is that she likes to read novels. She has no favorite authors.

[THE STATE]: To clarify, it was the fact that we didn't know much about her, but the only thing we know about her is she reads crime novels that she watches Criminal Minds and she watches Law & Order, SVU. And that would probably put an unfair expectation on what she might see in this case.

THE COURT: Okay. Anything else from counsel to challenge the explanation?

[DEFENSE COUNSEL]: No.

Accordingly, the only grounds for pretext raised by Wright below were that similarly situated Caucasian venirepersons, Venireperson 24 and Venireperson 8, were not struck.[4] However, despite discussing both said venirepersons in his argument here on appeal, Wright did *not* raise Venireperson 8 as a similarly situated venireperson in his amended Rule 29.15 motion.[5] "'In actions under Rule

---

[4] On appeal, Wright raises additional arguments for pretext, including that (1) the State's concern about people who consume crime or mystery media is unrelated to the case at bar, (2) the State's reasons were not clear and reasonably specific, and (3) the State's reasoning was not legitimate, because one of its stated reasons for striking Venireperson 47 – the concern about what type of books she reads – does not apply to Venireperson 47. While this latter argument was raised in Wright's amended motion and appears to be supported by the record, *none* of these arguments were raised in the trial court. We therefore decline to consider them. *See Johnson*, 220 S.W.3d at 383; *Collins*, 290 S.W.3d at 742 n.4. Notably, because Wright failed to raise these particular arguments at trial, they also would not have been considered on his direct appeal if asserted by appellate counsel, as courts "decline to review an argument of pretext for the first time on appeal." *Collins*, 290 S.W.3d at 742 n.4 (citations omitted).

[5] Instead, Wright pointed to *Venireperson 12*, alongside Venireperson 24, as a similarly situated Caucasian venireperson who was not struck. In doing so, Wright argued that co-counsel had been mistaken in his correction concerning Venireperson 12 during the *Batson* hearing. Even if this were true, defense counsel proceeded *only* with Venireperson 24 at trial. Indeed, the motion court found that "[o]f the two who he initially argued were similarly situated Caucasians, only one Venireperson 24, was indeed a

29.15, any allegations or issues that are not raised in the Rule 29.15 motion are waived on appeal.'" *Shockley*, 579 S.W.3d at 899 (quoting *Johnson v. State*, 333 S.W.3d 459, 471 (Mo. banc 2011)). Indeed, "'[p]leading defects cannot be remedied by the presentation of evidence and refinement of a claim on appeal.'" *Id.* (quoting *Johnson*, 333 S.W.3d at 471). To the extent Wright now attempts to demonstrate pretext by pointing to Venireperson 8 as a similarly situated Caucasian venireperson who was not struck, his argument is not preserved for appeal.

We will therefore only consider Wright's argument for pretext that Venireperson 24 is a similarly situated venireperson who was not struck. As with Venireperson 47, Venireperson 24 was questioned by defense counsel as a venireperson who had yet to speak. Defense counsel asked Venireperson 24 what she likes to do, to which she responded, "I like to read." When asked if she liked to read a particular type of book, Venireperson 24 answered, "Anything from sort of fiction or fantasy or anything in between. I just love to read." Venireperson 24 only spoke one other time during voir dire, which was to ask defense counsel to repeat a statement he had made.

We agree with the motion court that based on their respective answers, Venireperson 24 was not similarly situated to Venireperson 47. While relatively

---

Caucasian who Trial Counsel was arguing was similarly situated to Venireperson 47 but was not stricken by the State." "The motion court's findings are presumed correct." *Shockley*, 579 S.W.3d at 892 (citing *Johnson*, 406 S.W.3d at 898). This is especially true here, where Wright offers no challenge on appeal to this finding of the motion court, who also happens to be the same judge as the trial court judge. In fact, Wright forgoes any argument on appeal concerning Venireperson 12 as a similarly situated venireperson who was not struck. Venireperson 12 is thus not at issue on this appeal.

little information was known about both venirepersons, their respective answers to defense counsel were not comparable, in that Venireperson 47's answers demonstrated a preference for crime-based entertainment while Venireperson 24's did not.  Venireperson 47 stated that in her free time, she "watch[es] a lot of TV," her favorite shows being "Criminal Minds, [and] Law and Order SVU."  On the other hand, Venireperson 24 indicated no preference for crime-based television shows, media, or entertainment.  Instead, she stated she likes to read books "from sort of fiction or fantasy or anything in between."  Put another way, having little information concerning Venireperson 47 besides her enjoyment of crime-based television is simply not the same as knowing nothing about Venireperson 24 other than her enjoyment of reading fiction, fantasy, and other non-specified genres.

Moreover, the State explained during the *Batson* hearing *why* this consumption of crime-related entertainment by Venireperson 47 was concerning: "[T]hat would probably put an unfair expectation on what she might see in this case."  Such a concern is well-taken.  *See State v. Taylor*, 317 S.W.3d 89, 95 n.2 (Mo. App. E.D. 2010) ("Given the prevalence of television shows such as CSI and Law and Order, a trend exists wherein juries expect the State to present physical evidence on every issue.  The trial court does not err in allowing the State to ferret out such juror biases during voir dire.").  Wright challenges this particular explanation here on appeal as being "unrelated to the case at bar," but significantly, he offered no such arguments at trial.  In fact, the record reflects Wright willingly chose *not* to challenge this explanation.  "[W]e will not find error based on an

15

argument that the trial court was not afforded an opportunity to consider." *State v. Dominguez-Rodriguez*, 471 S.W.3d 337, 347 (Mo. App. E.D. 2015) (citing *Murray*, 428 S.W.3d at 714). As such, the record demonstrates Wright failed to show pretext.

Accordingly, the *Batson* claim would have been meritless. Appellate counsel recognized this, credibly testifying she identified and considered raising the *Batson* issue, but did not do so because she thought the claim "lacked merit[.]" This decision was clearly based on reasonable legal strategy, which "is virtually unchallengeable[.]" *Tate*, 461 S.W.3d at 22 (citations omitted). Additionally, "appellate counsel will not be held ineffective for failing to raise a meritless claim." *McAllister*, 643 S.W.3d at 136 (citing *Tisius*, 519 S.W.3d at 432). This lack of merit also prevents a finding of prejudice, as Wright cannot demonstrate that "there is a reasonable probability the outcome of the appeal would have been different" had the *Batson* claim been raised. *Tate*, 461 S.W.3d at 22 (citing *Tisius*, 183 S.W.3d at 215). Having failed to satisfy both the performance prong and prejudice prong, Wright's claim of ineffective assistance of counsel fails.

Wright's sole Point on Appeal is denied.

## Conclusion

For the foregoing reasons, the judgment of the motion court is affirmed.

_____
W. DOUGLAS THOMSON, JUDGE

All concur.

16